See also D.C., 351 F.Supp. 700.

**John Basil Thomas BIRD et al.**

v.

**PENN CENTRAL COMPANY et al.**

**Civ. A. No. 71–358.**

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1973.

E. Barrett Prettyman, Jr., Stuart Philip Ross, Samuel Shepard Jones, Jr., Hogan & Hartson, Washington, D. C., Robert G. Schloerb, Peterson, Ross, Rall, Barber & Seidel, Chicago, Ill., James J. Binns, Philadelphia, Pa., for plaintiffs.

Lewis H. Van Dusen, Jr., David P. Bruton, Amy F. Davis, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants Annenberg, Day, Dorrance, Harnwell, Rauch, Rincliffe and Seabrook.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

In this diversity action, plaintiffs are certain named underwriters trading under the name of Lloyds of London. They seek to rescind two insurance policies providing coverage for defendants, the Penn Central Company, its officers and directors. This action is based on alleged false statements and omissions in defendants' application for insurance. Defendants have interposed, *inter alia*, the defense of laches, alleging that since plaintiffs knew or should have known of the grounds upon which they are now basing their action for rescission long before the action was actually brought, they are now estopped from bringing this suit.[1]

By order of April 23, 1973, this court appointed a Special Master "to review,

---

1. The facts of this case are reported previously in greater detail at 334 F. Supp. 255 (E.D.Pa., 1971) and 341 F. Supp. 291 (E.D.Pa., 1972).

inspect and report to the court upon the propriety of the production of documents sought by the defendants' motion to produce and resisted by the plaintiffs on the grounds of attorney-client privilege and work product." On June 22, 1973, the Special Master issued his report recommending the production of certain documents and the withholding of others. Defendants having raised certain objections to the conclusions of the Special Master, the Special Master reconsidered his initial report, and issued a Supplemental Report on August 3, 1973. In this Supplemental Report, the Special Master reached the following conclusions and recommendations regarding the documents still in dispute:

"1) All documents prepared by counsel were prepared 'in anticipation of litigation' and are the 'work product' of counsel.

"2) Documents prepared by counsel and transmitted to the plaintiffs are also protected by the attorney-client privilege to the extent they contain confidential information, opinions and recommendations.

"3) By interjecting 'advice of counsel' as a reason for not seeking rescission sooner, plaintiffs have 'waived' their right to invoke the attorney-client privilege or work-product doctrine with regard to the legal advice, opinions and recommendations of their attorneys.

"4) The legal opinions and conclusions of counsel not actually transmitted to plaintiffs are likewise discoverable because the knowledge of an attorney can be imputed to his client.

"5) The defendants have shown a very substantial need for the production of documents containing the legal analyses, conclusions, and advice of counsel.

"6) The defendants have not established the substantial need requir-

ed by Rule 26(b)(3) for the production of post-rescission documents.

"It is therefore my recommendation that:

"1) All documents containing legal advice or legal opinions of counsel which were transmitted to the plaintiffs (or their agents) should be produced for inspection, copying, etc. by defendants. These documents have been listed in Category VIa.

"2) Documents prepared by counsel containing their legal opinions and recommendations should be produced even if the information was not transmitted to the plaintiffs unless the court concludes that the knowledge of the information contained in these documents cannot be imputed to the plaintiffs. These documents have been listed in Category VIb.

"3) All other documents not heretofore produced are protected by the attorney-client privilege and/or the work-product doctrine and need not be produced."

We approved the recommendations of the Special Master contained in the Supplemental Report by Order of August 9, 1973. However, on October 4, 1973, we granted plaintiffs' motions for reconsideration of that approval and requested that the documents specified by the Special Master as those listed in Categories VIa and VIb be forwarded to this court for *in camera* examination. Having carefully considered each of these documents, we reach the following conclusions.

 We find that the documents in question do not raise the issue of waiver of the attorney-client privilege. Each of these documents was prepared by plaintiffs' counsel and none of the portions that we have determined should be produced contains confidential information communicated to counsel by plaintiffs. They are rather a collection of

information gathered from other sources, as well as recommendations and conclusions by counsel on how to proceed. The parameters of the attorney-client privilege were well defined by Judge Wyzanski in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358–359 (D.Mass.1950):

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) *the communication relates to a fact of which the attorney was informed (a) by his client* (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." [Emphasis added.]

This test was quoted and applied in Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 294 F.Supp. 1148, 1150 (E.D.Pa., 1969). Therefore, to the extent the information sought to be discovered was not conveyed to counsel by his client, the attorney-client privilege is inapplicable.[2] LaRocca v. State Farm Mutual Automobile Insurance Co., 47 F.R.D. 278, 281 (W.D. Pa., 1969) (based on Pennsylvania law).

██ What is therefore in issue here is the discoverability of plaintiffs' counsel's work product. Under Rule 26(b)(3) and the doctrine enunciated in Hickman v. Taylor, 329 U.S. 495, 511–512, 67 S.Ct. 385, 91 L.Ed. 451 (1947), an attorney's work product is discoverable upon a showing of substantial need by the moving party, and an inability to obtain its equivalent by other means. The Special Master concluded, and we agree, that such a showing was made in this case. Defendants have asserted that plaintiffs are barred from bringing this action for rescission because they knew or should have known of the grounds alleged as the basis for rescission long before they filed suit. In order to substantiate their claim, defendants seek discovery of the following:

a) documents which relate to Executive Jet Aviation, Inc., Penphil Corporation, or Butcher & Sherrerd or to any act, error, omission, fact or occurrence alleged as a basis for rescission;

b) documents which relate to the decision by or on behalf of plaintiffs to seek rescission; or

c) documents which relate to any investigation by or on behalf of plaintiffs into any claims asserted under the policies.

Since the relevant inquiry is into what plaintiffs knew or should have known concerning grounds for their rescission action, only through discovery of information in the hands of plaintiffs, and their agents, can defendants substantiate their defense. Since in this case counsel served as investigators[3] and advisors on the merits of the poten-

---

2. " * * * in so far as the subject of these communications was the giving of legal or other advice upon the basis of facts disclosed to the attorney by a person outside the organization of defendant and its affiliates the communication is not privileged." 89 F.Supp. at 359.

3. It is unnecessary to reach the issue of whether some or all of these reports, correspondence, etc. prepared by counsel were not protected because counsel were acting as lay claim investigators at the time, Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co., 49 F.R.D. 54, 57 (S.D.N.Y.1970). *But see* Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487, 492 (C.A.7, 1970), aff'd. by equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), since we find that a sufficient showing to compel production of the attorney work product has been demonstrated.

tial and actual claims asserted by defendants under the policy, and therefore alone could ascertain the justification for a rescission action, discovery of the relevant documents in their possession is essential to defendants' case.

█ Because the nature of this defense concerns knowledge, legal theories and conclusions of plaintiffs' attorneys charged with claim investigation, such "advice of counsel" evidenced in these documents is discoverable when it is directly relevant to a possible rescission action or suggests reasons to indicate the propriety of such an action. Rule 26(b)(3) on its face protects against the .discovery of these aspects of the work product. However, exceptions have been made where such information is directly at issue, and the need for its production is compelling, as here. 4 Moore, Federal Practice ¶ 26.64 [4] at 26–447. *But see* 8 Wright & Miller, Federal Practice & Procedure, Civil, Sec. 2022 at 188 n. 97, Sec. 2026 at 229–232 (noting, however, at n. 3 two cases to the contrary). In the case of Shapiro v. Allstate Insurance Co., 44 F.R.D. 429 (E.D.Pa., 1968), an action based on bad faith representation of an insured, Judge Fullam held that letters written to defendant by their attorneys should be produced because they might reveal "a totally unrealistic evaluation of the likelihood of a successful defense of the action" and that investigation reports were not "an adequate substitute for the recommendations of counsel." 44 F.R.D. at 430–431. *Accord* Bourget v. Government Employees Insurance Company, 48 F.R.D. 29 (D.Conn.1969). Therefore, to the extent that legal opinions and observations made by counsel for plaintiffs suggest reasons to bring or not bring a .suit for rescission of the insurance contract, they are to be produced.

█ Similarly, discovery need not be limited to documents actually communi-

cated to plaintiffs by their counsel. Interoffice memos are likewise discoverable to the extent they are relevant to the bringing of an action for rescission. Whether on the facts of this case plaintiffs are to be charged with the knowledge and insights of their counsel [4] in the alleged failure to bring a timely action for rescission is a matter to be resolved in subsequent proceedings. For our present purposes, it is sufficient that to prepare their case adequately, defendants need to know why plaintiffs, through the direction of their attorneys, failed to bring a rescission action sooner. Therefore, certain documents or portions thereof from counsel's files never shown to plaintiffs shall be produced as we shall indicate.

However, in appreciation of the invasion into the attorney's work product which such discovery involves, we have exercised extreme diligence to protect any information contained in these documents from discovery which is not relevant to defendants' case for estoppel. Much of the information concerns recommendations for reserves, probability of liability under the policy, extent and amounts of coverage and tactical considerations (other than consideration of a rescission action). Since we have decided that only information relating to knowledge of outstanding claims and investigations against the defendants and any references to grounds for rescission or facts which might suggest the advisability of rescission are relevant to defendants' case, only such matters need be produced. All other matter is not only not relevant, and therefore not producible, but worse, if produced, might be highly prejudicial to plaintiffs should policy coverage ever be litigated.

We realize that lack of any discussion of a rescission action may be as helpful to defendants' case as the presence of such discussion in counsel's files. How-

---

4. *See* Link v. Wabash Rr. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1961) reh. den. 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112; Smith v. Ayer, 101 U.S. 320, 326, 25 L.Ed. 955 (1879).

ever, our assurance to defendants of such absence must suffice in light of the grave invasion of the attorney work product which would result were we to turn all of these documents over to defendants, regardless of their relevance, merely to assure defendants that no further references exist other than those of which we have permitted discovery.

■ In regard to the other issues resolved in the Special Master's Supplemental Report, we agree with his decision not to allow discovery of documents dating after the rescission action was filed, solely to determine whether plaintiffs had constructive knowledge of grounds for rescission before February 16, 1971. Such information is available to defendants from other sources, and they have not shown "substantial need" or that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26(b)(3).

Furthermore, we agree with the Special Master that these documents were prepared in anticipation of litigation, and that it is irrelevant that this particular suit may not have been foreseen at the time of their preparation.

While we have rejected the Special Master's application of the attorney-client privilege to communications originating with counsel, we have not deemed it necessary to decide whether any waiver of the attorney-client privilege *or* work-product principle occurred, since we have decided that the relevant portions of the documents we have examined involve only work product, and that compelling need for their production has been demonstrated.

### ORDER

And now, this 8th day of November, 1973, the Order of this court of August 9, 1973 approving the Supplemental Report of the Special Master is modified. Plaintiffs are hereby ordered to produce for inspection by defendants only those documents and portions thereof as set forth in Schedule "A" appended hereto.

## APPENDIX

### SCHEDULE "A"

CATEGORY VIa

| OUR NUMBER | IDENTIFICATION | DISPOSITION |
|---|---|---|
| 1 | Letter, W. Ross to Stewart-Smith, 8/4/70 | Produce with deletions as indicated * |
| 2 | Letter, S. Ross to T. Nork, 8/25/70 | " " " |
| 3 | Letter, S. Ross to D. Salter, 11/5/70 | " " " |
| 4 | Letter, L. Schauer to Underwriters, 12/11/68 | " " " |
| 5 | Letter, T. Nork to W. Bailey, 1/23/70, with enclosed letter, Schauer to Underwriters, 1/21/70 | No change ** |

 * Deletions indicated by brackets.

** No change from what was originally ordered produced in the Special Master's Original Report of June 22, 1973.

CATEGORY VIa

| OUR NUMBER | IDENTIFICATION | DISPOSITION |
|---|---|---|
| 6 | Letter, T. Nork to W. Bailey, 7/14/70, with enclosed letter, Schauer to Nork, 7/13/70 | No change |
| 7 | Letter, T. Nork to W. Bailey, 7/14/70, with enclosed letter, P. Thorpe to Nork, 7/7/70 | Produce with deletions as indicated |
| 8 | Letter, J. Tarpey to Nork, 7/7/70 | Produce in entirety |
| 9 | Letter, T. Nork to W. Bailey, 12/20/68 | Produce with deletions as indicated |
| 10 | Letter, Nork to Bailey, 1/23/70 with enclosed letter, Schauer to Nork, 1/21/70 and Schauer to Underwriters, 1/21/70 | No change |
| 11 | Letter, Nork to Bailey, 7/14/70 | No change |
| 12 | Letter, Thorpe to Nork, 7/7/70 | Produce with deletions as indicated |
| 13 | Letter, Tarpey to Nork, 7/16/70 | Produce in entirety |
| 14 | Letter, Hogan & Hartson to Underwriters, 9/10/70 | Produce with deletions as indicated |
| 15 | Letter, W. Ross to Underwriters, 11/16/70 | No change |
| 16 | Letter, Hogan & Hartson to Underwriters, 11/13/70 | No change |
| 17 | Letter, W. Ross to Underwriters, 1/8/71, with enclosed letter, Hogan & Hartson to Underwriters, 1/5/71 | No change |
| 18 | Memo, S. Ross to File, 8/3/70 | No change, not produced |
| 19 | Letter, S. Ross to W. Ross, 8/21/70 | No change, not produced |
| 20 | Memo, S. Ross to File, 8/6/70 | No change, not produced |
| 21 | Memo, Prettyman and Ross to File, 8/10/70 | No change, not produced |
| 22 | Memo, S. Ross to File, 8/7/70 | No change |

CATEGORY VIb

| OUR NUMBER | IDENTIFICATION | DISPOSITION |
|---|---|---|
| 23 | Letter, S. Ross to W. Ross, 12/29/70, with draft memo | No change, not produced |
| 24 | Memo, Prettyman to File, 8/4/70 | Produce with deletions as indicated |
| 25 | Memo, S. Ross to File, 8/10/70 | No change, not produced |
| 26 | Memo, Prettyman and S. Ross to W. Ross, 8/12/70 | No change, not produced |
| 27 | Draft Memo, S. Ross to S. Jones, 8/11/70 | Produce in entirety |
| 28 | Memo, Rousselot to Pretty-man, S. Ross and Jones, 9/1/70 | No change, not produced |
| 29 | Memo, Jones to S. Ross and Rousselot, 8/7/70 | No change, not produced |
| 30 | Memo, Jones to Prettyman, S. Ross and Rousselot, 8/18/70 | No change, not produced |
| 31 | Memo, Jones to Prettyman, S. Ross and Rousselot, 8/24/70 | No change, not produced |
| 32 | Memo, Jones to Prettyman, S. Ross and Rousselot, 9/10/70 | Produce with deletions as indicated |
| 33 | Memo, Jones to Prettyman and S. Ross, 9/21/70 | " " " |
| 34 | Memo, Jones to S. Ross, 10/6/70 | " " " |
| 35 | Memo, Jones to Prettyman and S. Ross, 11/13/70 | No change, not produced |
| 36 | Handwritten notes by Pretty-man, 7/31/70 | No change, not produced |
| 37 | Handwritten notes by Pretty-man, undated | No change, not produced |
| 38 | Handwritten notes by Pretty-man, undated | No change, not produced |
| 39 | Memo, S. Jones to S. Ross, 9/24/70 | Produce in entirety |
| 40 | Memo, S. Ross to File, 9/25/70 | Produce in entirety |
| 41 | Memo, S. Ross to File, 10/27/70 | No change |