**Lynn MARTIN, Secretary
of Labor, Petitioner,**

v.

**BALLY'S PARK PLACE HOTEL & CA-
SINO and Occupational Safety &
Health Review Commission, Respon-
dents.**

**No. 92–3001.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 14, 1992.

Decided Jan. 6, 1993.

As Amended Feb. 12, 1993.

Bruce Justh (Argued), U.S. Dept. of Labor, Office of Sol., Washington, DC, for petitioner.

David R. Miller (Argued), Grotta, Glassman & Hoffman, Roseland, NJ, for respondent Bally's Park Place Hotel & Casino.

Before: STAPLETON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This petition for review raises several issues regarding the application of the attorney work product doctrine to a dispute between the Occupational Health and Safety Administration and a private employer. Specifically, we must decide the extent to which the OSHA records access rule, 29 C.F.R. § 1910.20 (1991), incorporates the work product doctrine and whether under the facts here the employer properly invoked the doctrine to refuse OSHA's re-

quest for the production of a consultant's report. The Secretary of Labor cited the employer for violating the records access rule by withholding the report, and an Administrative Law Judge upheld the citations. The Occupational Safety and Health Review Commission vacated the citations, upholding the employer's claim of work product.

In reviewing the Commission's decision, we must determine the scope of work product protection provided in the records access rule, including the point in a dispute where the protection attaches and the showing OSHA must make to overcome a claim of work product. Because we agree with the Commission's determination that the work product doctrine applies to document requests made under the records access rule, and because we find that substantial evidence supports the Commission's factual finding that the report OSHA requested here was protected work product, we will affirm.

## I.

In March 1987, a bartender at Bally's Park Place Hotel & Casino in Atlantic City, New Jersey, telephoned OSHA's regional office in Camden, New Jersey, to complain about skin, eye, and throat irritations apparently resulting from chemical emissions in her work station. These problems were traced to a dishwasher located at the service bar where she worked. The emissions consisted of iodine, a chemical contained in a compound known as "Mikroklene" that was used in the dishwasher's cold water rinse cycle.

OSHA's Acting Area Director responded to the employee's complaint by telling her that the agency was backlogged and could not conduct an inspection for a month or two. When the employee requested a speedier response, the Acting Area Director suggested handling the matter informally. The employee agreed to this course of action.

An exchange of letters between OSHA and Bally's followed. On March 10, 1987, OSHA wrote Bally's, notifying the company of the employee's complaint and directing it to "investigate the alleged condition(s) and make the necessary correction(s) and/or modification(s)" within thirty days. The letter stated further that "[i]f we do not receive a response from you indicating that appropriate action has been taken, an inspection may be conducted." On March 16, Bally's Director of Labor Relations, Richard Tartaglio, wrote OSHA, stating that Bally's investigation revealed an adequate air flow in the bar service area and suggesting that the iodine odor resulted from improper dilution of Mikroklene by the bar porters. OSHA wrote Tartaglio again on April 3, advising him that "[y]our response still leaves the condition in open status [since] [t]he complainant has stated that the irritating condition still exists."

Upon receipt of this letter, Tartaglio reported the entire matter to Bally's General Counsel, Dennis Venuti. Venuti reviewed the correspondence and concluded that Bally's risked claims from the affected employees, from their union, and from OSHA. As he testified before the Administrative Law Judge, "I reached the conclusion ... that I had to, at this point, start the process of preparing a defense against such claims." Accordingly, Venuti decided that Bally's should retain a technical expert to test the emissions from the dishwasher. In an internal memorandum dated April 17, Venuti directed Tartaglio to hire such an expert to prepare a report for Venuti's exclusive use. On April 20, Bally's took the dishwasher out of regular service. On May 4 and 5, the consulting firm of J.C. Anderson Associates conducted air sampling tests on the dishwasher. The firm prepared a report of the test results and gave the report only to Venuti.

Following the consultant's submission of the report, OSHA and Venuti initiated another exchange of communications. On May 29, an OSHA representative telephoned Venuti to request a copy of the report. Venuti refused, claiming that the report was protected by the attorney-client

privilege and the work product doctrine.[1] OSHA then wrote Bally's on June 2, stating that "[u]nless the complainant disputes your statements [regarding correction of the iodine problem] and provides us with additional information in the next few days, you may consider this matter closed." The letter also asserted OSHA's and the employees' right to a copy of the report under the records access rule, 29 C.F.R. § 1910.20 (1991), and stated that "[i]f upon request, you refuse to provide the results to employees or their representatives OSHA would be required to take appropriate action." Three days later, the bar employees' union also wrote Bally's to request a copy of the report. Bally's denied both requests on the ground that the report constituted work product. The complaining employee has since brought a personal injury action against Bally's in New Jersey state court based on the dishwasher emissions.

On July 27, OSHA served Bally's with a subpoena *duces tecum* demanding the report. Through outside counsel it retained to handle this matter, Bally's responded by letter on August 17, setting forth its opposition to the subpoena. OSHA then abandoned its efforts to enforce the subpoena. Instead, on October 26, OSHA issued a citation to Bally's for willfully violating the records access rule by refusing to provide the agency with a copy of the report. On January 20, 1988, OSHA issued a second citation alleging that Bally's had willfully violated a separate provision of the records access rule by denying the union a copy of the report.

Bally's contested the citations before the Occupational Safety and Health Review Commission, again asserting its claim of work product. The case was assigned to an Administrative Law Judge, who sustained the citations following a hearing and an examination of the contested report *in camera*. In upholding the citations, the ALJ determined that the report did not qualify as work product because it con-

tained purely technical information which required no legal interpretation. The ALJ then ruled that, even assuming the report constituted work product, OSHA and the union were entitled to the report. He based this determination on his finding that they had demonstrated a "substantial need" for the report because Bally's had taken the dishwasher out of service following the tests, thus denying OSHA and the employees the opportunity to test the machine themselves. The ALJ also ruled that OSHA could not be faulted for failing to conduct its own test because OSHA had reasonably relied upon Bally's to share the test results. Bally's petitioned the Commission for review.[2]

The Commission reversed the ALJ's decision in all respects and vacated the citations. In upholding Bally's claim, the Commission determined that the work product doctrine applies to document requests made under OSHA's records access rule. It also ruled that the applicable standard for work product in this context is found in Fed.R.Civ.P. 26(b)(3), which provides that:

[A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The Commission then determined that the requested report fell within the ambit of Rule 26(b)(3), since it was (1) a "document," (2) "prepared in anticipation of litigation," and (3) prepared by a "party's representative," Bally's consultant, for that "party's representative," Bally's attorney. The Commission also rejected the ALJ's

---

**1.** Bally's has since abandoned its claim that the report is protected by the attorney-client privilege.

**2.** The Commission has subject matter jurisdiction to review decisions of its ALJs under section 10(c) of the Occupational Safety and Health Act, 29 U.S.C. § 659(c) (1988).

conclusion that the doctrine did not apply to "purely technical" or "factual" information, a limitation not imposed by the rule.

The Commission then determined that OSHA failed to make a sufficient showing to overcome the qualified protection of the work product doctrine. Under Rule 26(b)(3), a party can obtain discovery of otherwise protected work product by demonstrating that it has "substantial need" of the requested materials and that it "is unable without undue hardship to obtain the substantial equivalent of the[se] materials by other means." Applying this two-part test, the Commission found that, even assuming OSHA had "substantial need" of the report, the agency had failed to establish that it could not obtain "substantially equivalent" materials without "undue hardship." In this regard, the Commission made several factual findings. It found that since there was no evidence that Bally's precluded OSHA from conducting its own test on the dishwasher, OSHA could in fact have done so. The Commission rejected OSHA's claim that it could not have tested the dishwasher because Bally's had removed it from regular service, noting that OSHA could have requested Bally's to retrieve the dishwasher for this purpose. It is undisputed that OSHA did not explore this possibility with Bally's. The Commission also found that, given Bally's consistent assertion of work product, OSHA could not establish that it "reasonably relied" on Bally's to share the report with it.

Acting on behalf of OSHA, the Secretary of Labor filed a timely petition for review from the Commission's decision.

## II.

### A.

We have jurisdiction over the Secretary's appeal under section 11(b) of the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 660(b) (1988). On appeal, the Secretary disputes both the Commission's determination that the substantive standards of Fed.R.Civ.P. 26(b)(3) govern Bally's claim of work product and its factual findings that the report was work product

and that the Secretary failed to overcome the qualified protection afforded by that rule.

■ Different standards of review govern our consideration of these issues. We review the Commission's interpretation of the records access rule to determine whether it was made "in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Our review here is plenary. *Dole v. East Penn Mfg. Co.*, 894 F.2d 640, 643 (3d Cir.1990). Our review of the Commission's decisions that the report was work product and that the Secretary had failed to make a sufficient showing to overcome the qualified protection of the work product doctrine is more limited. Under the OSH Act, "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a) (1988); *see Martin v. OSHRC,* —— U.S. ——, ——, 111 S.Ct. 1171, 1178, 113 L.Ed.2d 117 (1991).

### B.

The OSH Act authorizes the Secretary of Labor to prescribe rules requiring employers to make available certain records. 29 U.S.C. § 657(c)(1). Pursuant to this authority, the Secretary has promulgated the records access rule. 29 C.F.R. § 1910.20. This rule requires employers to make available to OSHA and to its employees two types of records which the employers have voluntarily generated—"medical records," such as the results of employees' medical examinations, and "exposure records," which include records monitoring toxic substances in the workplace. 29 C.F.R. § 1910.20(c)(5) and (c)(6).

OSHA has identified certain goals served by the inclusion of "exposure records" in the records access rule. These records "reveal the identity of, and extent of exposure to, toxic substances or harmful physical agents, ... [which] enable[s] workers to play a meaningful role in their own health management." 45 Fed.Reg. 35212, 35213 (1980). Additionally, "[e]mployee exposure records are crucial to the performance of many of the agency's investigatory, en-

forcement, and other regulatory functions." 45 Fed.Reg. at 35226. The information generated helps ensure employers' compliance with OSHA standards and is also "routinely used in rulemaking proceedings for such purposes as defining the universe of employees at risk and analyzing the extent to which current technology has achieved a desired level of protection." *Id.*

The records access rule as initially promulgated did not expressly state how, in an adversarial context, its disclosure obligations would intersect with the protections against disclosure afforded litigants by the law of privileges. But a year after the rule took effect, OSHA issued an interpretation on this subject. The parties agree that this interpretation constitutes the governing standard in this case and that, in advancing it, OSHA intended to include some quantum of work product protection to employers who are requested to produce documents under the records access rule.[3]

The parties disagree, however, over the breadth of the work product rule set forth in the OSHA interpretation. In upholding Bally's claim of work product, the Commission applied the standard contained in Fed. R.Civ.P. 26(b)(3). The Commission justified its application of the federal rule on three grounds. First, it noted that under the OSH Act, 29 U.S.C. § 661(g), Rule 26(b)(3) applies to Commission proceedings unless the Commission adopts a different rule, which it has not. Second, the Commission observed that had OSHA sought to enforce its subpoena against Bally's, Rule 26(b)(3) would apply under Fed.R.Civ.P. 81(a)(3),

which provides that the Federal Rules of Civil Procedure govern proceedings to enforce subpoenas issued by United States agencies like OSHA. In the Commission's view, Rule 26(b)(3) should govern OSHA's document request under the records access rule here because "the mere form of the proceeding should not change the protections for an attorney's work product." Third, the Commission found that neither the OSH Act nor the records access rule contained the "clear and explicit" language necessary to abrogate the work product rule, which it termed "a basic public policy that has historical roots in the common law tradition."

On appeal, the Secretary disputes the Commission's analysis on several grounds. She argues that the Commission wrongly applied Fed.R.Civ.P. 26(b)(3), rather than the records access rule itself, to the document request. This erroneous choice of law matters, in her view, because she reads OSHA's interpretation of the records access rule to establish a more limited work product doctrine than that contained in Rule 26(b)(3). Under this narrower rule, the Bally's report would not qualify as work product. The Secretary also urges us to deny work product protection to the report on the ground that Bally's and OSHA were not "litigation adversaries" at the time the report was prepared. Finally, the Secretary contends that upholding Bally's claim of work product for the consultant's report would not further what she identifies as the core policy underlying the work product doctrine—protection of an attorney's thought processes.[4]

---

**3.** OSHA subsequently proposed to codify this interpretation by providing that medical records subject to disclosure do not include "[r]ecords created solely in preparation for litigation which are privileged from discovery under the applicable rules of procedure and evidence." 47 Fed.Reg. 30420, 30425 (1982). This exclusion has since been codified as part of the definition of "employee medical record." *See* 29 C.F.R. § 1910.20(c)(6)(ii)(C). The citations in this case are not subject to the codified exclusion since OSHA issued them prior to the codification. Furthermore, the codified exclusion applies only to "medical records," not to "exposure records," which are at issue here. Before the Commission, the Secretary seized upon this distinction to argue that "exposure records" such as the

Bally's report were not subject to the work product doctrine at all. On appeal, the Secretary has abandoned this contention, correctly recognizing that the interpretation in force at the time OSHA issued Bally's the citations was not limited to medical records and thus applied to exposure records as well.

**4.** The Secretary argues that under the Supreme Court's recent decision in *Martin v. OSHRC,* —— U.S. ——, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), we must defer to her interpretation both of the records access rule and of OSHA's interpretation of the scope of work product protection contained in that rule, rather than to the Commission's. But in laying down this general

■ We address these arguments in turn. As a threshold matter, we assume the records access rule and not Rule 26(b)(3) governs this case. Although we agree with the Commission that this lawsuit was technically a Commission proceeding to which Rule 26(b)(3) would ordinarily apply under the OSH Act, where, as here, the entire litigation concerns whether the records access rule gave OSHA the authority to override Bally's claim of work product, we will decide the case under the records access rule. But because we find that the records access rule fully incorporates the standards of Rule 26(b)(3), this choice of law issue is of no practical effect.

■ In urging that the records access rule contains a narrower work product rule than Rule 26(b)(3), the Secretary relies upon OSHA's 1981 interpretation, which provides:

> The question has been raised whether an employer must provide access to records which are created solely in anticipation of litigation and which are otherwise privileged from discovery under the prevailing rules of procedure or evidence. An example could be a medical opinion prepared for the employer for purposes of aiding the employer's case by a company physician after a workmen's compensation claim has been filed. It has been OSHA's interpretation that the standard does not contemplate coverage of such a record if the record would not otherwise be available to the employer or his attorney in the litigation. On the other hand, the mere fact that a medical record [see definition at 29 CFR 1910.20(c)(6)] not originally created in anticipation of specific litigation will ultimately be used as evidence in a private legal proceeding does not put it outside the scope of the standard.

46 Fed.Reg. 40490 (1981).

■ The Secretary reads this passage to insulate work product prepared for litiga-

tion only where the litigation has begun or is at least "imminent," a standard narrower than that embodied in Fed.R.Civ.P. 26(b)(3), which requires only that the material be prepared "in anticipation of litigation." As we have previously indicated, a document satisfies Rule 26(b)(3) where "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979)).

The language of the OSHA interpretation reveals that OSHA intended to incorporate the Rule 26(b)(3) standard. The opening sentence of the interpretation tracks Rule 26(b)(3) by referring to materials created "in anticipation of litigation" and suggests incorporation of that standard by referring to documents "otherwise privileged from discovery under the prevailing rules of procedure or evidence." The Secretary argues that this language is somehow limited by a passage two sentences later discussing how the OSHA interpretation would apply to a medical opinion in a workmen's compensation case. The language upon which the Secretary relies recites that "the standard does not contemplate coverage of such a record if the record would not otherwise be available to the employer or his attorney in the litigation." The Secretary contends that the words "in the litigation" evince OSHA's intent to limit work product to instances in which an actual litigation has begun or is "imminent."

Viewed in the context of the entire OSHA interpretation, this reading is not convincing. The phrase "in the litigation" refers only to the hypothetical workmen's compensation litigation discussed in the immediately preceding sentence; it does not

---

rule in *Martin*, the Supreme Court also created an exception. It stated that "agency 'litigating positions' are not entitled to deference when they are merely appellate counsel's *'post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court." — U.S. at ——, 111 S.Ct. at 1179 (citations omitted).

Where, as here, the Secretary's argument that OSHA's interpretation provided for a narrower work product rule in the records access context appeared for the first time in her brief to this court, this principle applies. Thus, we accord no special deference to her interpretation.

modify the interpretation's first sentence, which indicates OSHA's intent to incorporate the standards of Rule 26(b)(3). The sentence that contains the phrase "in the litigation" only reflects OSHA's intent to provide a work product standard that does not exceed Rule 26(b)(3). This intent is demonstrated by OSHA's statement that its standard would not insulate a record that "would not otherwise be available" in litigation. Although the language employed is not crystal clear, we read it to imply a standard coextensive with, not narrower than, Rule 26(b)(3).

The Secretary seeks additional support for her narrow work product rule in OSHA's 1982 explanation of its 1981 interpretation. There, the agency stated that it had incorporated a work product exclusion in the records access rule "to make clear that the rule is not meant to provide a way around local rules of discovery or evidence when the claim to which the record in question relates is being litigated and the record itself is a product of the litigation." 47 Fed.Reg. 30420, 30425 (1982). But the significance of this language is that it reflects OSHA's intent to prevent the agency from using the records access rule to evade otherwise applicable discovery rules. In order to do this, OSHA established a work product standard coextensive with, not narrower than, the discovery rules.

Moreover, we believe that OSHA's effort to obtain the report through the records access rule implicates the concern expressed in the interpretation because it reflects an attempt to avoid a claim of work product. OSHA originally sought to obtain the consultant's report from Bally's by administrative subpoena. Had OSHA sought to enforce that subpoena, Bally's would have been entitled to the full measure of work product protection in Fed.R.Civ.P. 26(b)(3), since Fed.R.Civ.P. 81(a)(3) expressly provides that the Federal Rules of Civil Procedure "apply to proceedings to compel the ... production of documents in accor-

dance with a subpoena issued by an officer or agency of the United States...." In the hearing before the ALJ, OSHA's Area Director, Phyllis Kyner, testified that in the fall of 1987, OSHA's legal counsel in New York City informed her that the agency "preferred not to enforce the subpoena, but to go ahead with the Willful Citation" under the records access rule. OSHA offered no explanation for abandoning the subpoena process, which it had initiated three months before it issued the first of its two citations to Bally's. Nor does the Secretary attempt to justify this shift in approach on appeal.

■ Even assuming that OSHA's decision to proceed via citation rather than subpoena did not reflect a desire to circumvent the work product doctrine, we believe that it should not have this effect. We agree with the Commission that the work product rule should be the same whether the document is sought by subpoena or citation. We disagree with the Secretary's contention that this proceeding cannot be analogized to a subpoena enforcement proceeding. Under the facts here, the citation and the subpoena were both coercive means by which OSHA sought to obtain the same document. To treat Bally's claim of work product differently in a citation proceeding than in a subpoena enforcement proceeding would elevate form over substance, and would render OSHA's administrative subpoena power superfluous, at least for the class of documents that it may request under the records access rule. *Cf. Matter Of Kulp Foundry*, 691 F.2d 1125, 1131 (3d Cir.1982) (rejecting OSHA effort to obtain documents pursuant to an inspection warrant on the ground that such a ruling would render OSHA's subpoena power "superfluous"). Therefore, we conclude that the records access rule incorporates the work product doctrine set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure.[5]

---

5. Because we base this conclusion on the text of the OSHA interpretation itself, we need not and do not reach the question addressed by Judge Nygaard's concurring opinion—whether Rule 26(b)(3) applies to OSHA's document request via

Rule 81(a)(3) as a matter of "federal common law" despite the fact that by its terms Rule 81(a)(3) provides only that the Federal Rules of Civil Procedure apply to proceedings to enforce agency subpoenas, which this case is. not. Nor

In reaching this conclusion, we do not mean to suggest that in all, or even most, cases a citation issued under the records access rule to enforce compliance with a request for an exposure record will be analogous to a subpoena. We recognize that the records access rule serves a variety of regulatory, enforcement, and informational functions that do not implicate the work product doctrine. Only where an employer has prepared an exposure record in anticipation of litigation does the work product doctrine come into play.

## C.

Our next inquiry is whether the consultant's report qualifies as work product under the standards of Fed.R.Civ.P. 26(b)(3). The Commission determined that it did. Because we conclude that in doing so, the Commission was applying the records access rule, we review its determination under the substantial evidence standard. *See Martin v. OSHRC,* —— U.S. at ——, 111 S.Ct. at 1178 (ruling that under OSH Act, substantial evidence standard governs Commission's application of the Secretary's standards to facts in making a determination).

The Secretary urges that the consultant's report does not qualify as work product for several reasons. First she contends that General Counsel Venuti's "unilateral belief" that Bally's was the "litigation adversary" of OSHA and the union is insufficient as a matter of law to establish such a relationship. In Rule 26(b)(3) terms, this argument apparently seeks to refute the contention that the report was "prepared in anticipation of litigation."[6]

Only by looking to the state of mind of the party preparing the document or, as here, the party ordering preparation of the document, can we determine whether this test has been satisfied. Thus, that person's "unilateral belief" that litigation will result is the initial focus of the inquiry into whether the report was prepared "in anticipation of litigation." The rule is limited, however, by the requirement that the preparer's anticipation of litigation be objectively reasonable. As we have stated before:

> Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*In re Grand Jury Proceedings,* 604 F.2d at 803 (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2024 at 198 (1970)). *See also* 4 James W. Moore et al., *Moore's Federal Practice* ¶ 26.64[2] at 26–352 (1991) ("the prospect of litigation must be identifiable" in order to trigger work product protection).

In limiting work product to materials prepared "in anticipation of litigation," the drafters of Rule 26(b)(3) excluded from the rule's protection "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Fed.R.Civ.P. 26(b)(3) advisory committee note. In the OSHA records access context, this limitation would prevent

do we rely, as did the Commission, on the proposition that the work product rule is a basic public policy rooted in the common law that may only be abrogated by "clear and explicit" statutory language.

**6.** Both parties use the term "adversary" as a proxy for the "anticipation of litigation" prong of the Rule 26(b)(3) inquiry. They do so in an effort to bring this case in line with our recent decision in *Westinghouse v. Republic of Philippines,* 951 F.2d 1414 (3d Cir.1991). There, we considered the distinct question of when parties are deemed to have waived work product pro-

tection by disclosing to a third party documents for which they later seek such protection. We determined that only disclosure to an "adversary" constituted such a waiver. 951 F.2d at 1428. By contrast, where, as here, we are concerned only with a party's motivation in preparing a document, we inquire whether that document was prepared "in anticipation of litigation," not whether the creator of the document and the party seeking that document are adversaries. Thus, *Westinghouse* is not directly applicable here.

an employer from withholding as work product routine exposure records which are necessary for OSHA to carry out its enforcement or other regulatory functions.

The consultant's report OSHA seeks in this case was not such a routine record because substantial evidence supports the conclusion that Venuti reasonably anticipated litigation at the time he commissioned it. In the internal memorandum instructing Richard Tartaglio to hire the consultant who prepared the report, Venuti referred to "certain allegations raised by OSHA concerning" the emissions and instructed Tartaglio to contact an "appropriate testing service to ... provide us with the necessary data to be utilized in defense of the ... matter." To preserve his right to claim work product protection, Venuti directed that the report be given solely to him.

The Secretary nonetheless argues that Venuti could not under the circumstances have anticipated litigation when he commissioned the report. She seeks support for this argument in OSHA's letters of April 3rd and June 2nd, stating that OSHA would "close" its inquiry if Bally's rectified the emissions problem. We note that only the April 3rd letter bears on the question of whether the report was "prepared in anticipation of litigation," since by June 2nd, the report had already been prepared. Moreover, in neither letter did OSHA unequivocally commit to ending its inquiry. Even had OSHA made such a commitment, it did not, nor could it, guarantee Bally's that the union or one or more of the employees would not initiate litigation.[7] Indeed, the bartender whose complaint to OSHA triggered this dispute has brought such an action against Bally's.

We find no evidence that Bally's engaged in subterfuge in claiming work product. It consistently asserted this position. The correspondence and testimony reveal that the report was commissioned in response to OSHA's inquiry and out of concern that either OSHA or the employees would bring suit. Therefore, we believe that substantial evidence supports the Commission's determination that the report was prepared in anticipation of litigation. *See Martin v. OSHRC*, —— U.S. at ——, 111 S.Ct. at 1178.

The Secretary next argues that the work product doctrine should not apply to the report because it contained purely factual material. She urges that extending protection to the report would not further the "core purpose of the work product doctrine[, which] is to protect an attorney's thought processes from being disclosed to an adversary."

■ This argument is overbroad. By its terms, Rule 26(b)(3) protects "documents and other materials ... prepared ... by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)...." This definition encompasses factual materials. Moreover, as the Supreme Court stated in *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the work-product doctrine does not seek merely to protect an attorney's thought processes, because

the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect

---

7. As noted above, Venuti testified before the ALJ that he commissioned the report in anticipation of litigation with the employees and with OSHA. Thus, we need not decide whether his anticipation of litigation with one party would have been sufficient for work product to apply in a related litigation with the other party. *See Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334, 337 (S.D.N.Y.1969) (upholding claim of work product made by nonparty witness on the ground that "[t]he work product

privilege is not ... limited to documents prepared by a party in the course of actual litigation with the party seeking discovery of the document."); *see also Bird v. Penn Central Co.*, 61 F.R.D. 43, 48 (E.D.Pa.1973) (according work product protection to documents on ground that where "documents were prepared in anticipation of litigation, ... it is irrelevant that this particular suit may not have been foreseen at the time of their preparation").

material prepared by agents for the attorney as well as those prepared by the attorney himself.

422 U.S. at 238–39, 95 S.Ct. at 2170. *See also United Coal Cos. v. Powell Const. Co.,* 839 F.2d 958, 966 (3d Cir.1988) (relying on *Nobles* to find that statement of a party's insurer constituted work product).

In the alternative, the Secretary concedes that "[e]ven factual work product is protected by Rule 26(b)(3)" but argues that since work product only protects the report itself, and not its underlying facts, the Secretary should be able to obtain these facts. She notes that, were OSHA and Bally's involved in litigation to which the report was relevant, OSHA could learn these facts through interrogatories or depositions. But, the Secretary continues, since the parties never engaged in litigation, other than this proceeding to obtain the report, OSHA had no opportunity to use these discovery tools. As a result, OSHA could more easily have obtained this information had it sued Bally's. The Secretary's cure for this apparent anomaly is to compel Bally's to provide the report to OSHA. We disagree.

We observe that, as the Secretary herself admits, she would have to make a threshold showing that the particular material sought was relevant in order to take discovery. We are not prepared to compel disclosure where, as here, she has not made, and has no occasion to make, such a showing.

■ At bottom, the Secretary's argument is that a party should not be able to claim work product where its adversary cannot take discovery. Yet nothing in the text of Rule 26(b)(3) limits a party's work product protection in instances in which its adversary cannot take discovery. Furthermore, we are unwilling to read such a limitation into the rule. The only reason no discovery is possible here is because of the peculiar procedural posture of this litigation, which solely concerns disclosure of the report itself and involves no substantive claims on which discovery might be taken. Were OSHA to commence such an action in the future and take discovery, Bally's would presumably seek to protect the report as work product, and the dispute over the scope of that protection would occur, as it should, in a concrete factual context. We cannot preclude Bally's from asserting work product in the event OSHA were to bring such an action, nor can we decide such a discovery dispute in the abstract. In short, that the report contains facts that might be discoverable in a hypothetical litigation between OSHA and Bally's does not, without more, compel Bally's to provide OSHA with the report at this time.

**D.**

■ We now turn to the question whether the Secretary nonetheless made a sufficient showing to obtain the report. As we have discussed, the work product doctrine offers only qualified protection. Under Rule 26(b)(3), a party can obtain an otherwise protected document upon demonstrating a "substantial need" for the document and that it "is unable without undue hardship to obtain the substantial equivalent of the [document] by other means."

The Commission assumed that OSHA could demonstrate a "substantial need" for the report, but found it failed to establish that it could not have obtained the facts contained in the report without "undue hardship." The Commission based its conclusion on certain factual findings. It determined OSHA could have performed its own tests on the dishwasher, observing that OSHA had the technical capability to perform air sampling tests and that Bally's had not precluded OSHA from doing so. The Commission also found OSHA could not have "reasonably relied" on Bally's to share the report, since there was no evidence of such an understanding between the parties. Bally's consistent refusal to give either OSHA or the union the report supported this finding.

We assume, as did the Commission, that OSHA demonstrated a "substantial need" for the Bally's report as that phrase is used in Rule 26(b)(3). Our final inquiry concerns the Commission's determination that OSHA did not establish it could not obtain the "substantial equivalent" of the Bally's re-

port "without undue hardship." We find substantial evidence supports the Commission's finding that OSHA could not have "reasonably relied" on Bally's to share the report.[8] We are less convinced by the Commission's finding that OSHA itself could have tested the dishwasher prevents OSHA from establishing "undue hardship."

OSHA makes two arguments to support its claim of "undue hardship." It asserts Bally's prevented the agency from conducting its own tests. OSHA notes that although Bally's tested the dishwasher on May 4 and 5, it did not notify OSHA it would not share the test results until May 29, and removed the dishwasher shortly thereafter. OSHA argues that upholding Bally's claim of work product would encourage employers to bury incriminating evidence.

Subterfuge can, of course, defeat a claim of work product. But the Commission determined the facts did not support this allegation, and we believe substantial evidence supports this finding. The Commission credited testimony by Bally's officials that the company never denied OSHA the opportunity to test the machine. Noting that Bally's put the machine back into service to conduct tests, the Commission found OSHA never established Bally's could not or would not have re-installed the machine so OSHA could test it. Accordingly, the Commission found removal of the machine did not preclude OSHA from conducting its own tests, a possibility OSHA never explored.

OSHA also maintains its backlog prevented it from conducting the tests itself. On appeal, OSHA argues that denying it access to the report would penalize the agency for choosing a course of action that benefitted Bally's by allowing it to resolve an employee complaint without risking an OSHA citation or penalty.

This argument has considerable weight. We should encourage the voluntary, cooperative, and speedy resolution of workplace safety problems such as occurred here. A rule that would shield employer-prepared or commissioned reports from disclosure to OSHA whenever it chose to handle a safety problem informally might well deter the agency from opting for this course of action. But a standard under which OSHA could show the undue hardship necessary to defeat a claim of work product simply by asserting a shortage of resources, such as backlog, tilts too far in the other direction. The resulting concerns about disclosure would at least arguably discourage companies from conducting their own tests and resolving safety problems before a formal investigation or litigation has begun. It would also be too easy a showing for the agency to make—and a nearly impossible one for an employer to refute.

 We find that OSHA must show more than a shortage of resources to demonstrate the undue hardship required to overcome a claim of work product. This is especially true where, as here, OSHA had the technical capability to conduct the tests, where the resources necessary to conduct the tests were not shown to have been prohibitive, and where in the face of Bally's consistent refusal to share the tests OSHA never explored the option of conducting its own tests. Therefore we hold, in the circumstances of this case, substantial evidence supports the Commission's conclusion that OSHA failed to establish a right to the Bally's report.

## III.

 In sum, an employer cannot claim work product to avoid sharing routine exposure records with OSHA, but only those

8. In view of OSHA's backlog and its suggestion that Bally's conduct the tests, the ALJ found OSHA "reasonably relied" upon Bally's to share the results. The Commission rejected this finding. It found the evidence the ALJ relied upon did not indicate "a meeting of the minds" that Bally's would share the test results with OSHA. We believe substantial evidence supports the Commission's finding. There is no evidence of

an agreement or understanding that Bally's would disclose the results of the test to OSHA. Indeed, we would find such an agreement surprising, especially since in its April 3 letter, OSHA stated the matter remained "in open status," language which implied the agency had not determined whether or not to bring an action against Bally's.

records prepared in anticipation of litigation. As we have stated, in determining whether a particular document was prepared in anticipation of litigation, "the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2024 at 198 (1970)).

For the foregoing reasons, we will deny the petition for review of the Commission's order.

NYGAARD, Circuit Judge, concurring:

I agree with the majority that the work product doctrine[1] applies in this case and requires that these OSHA citations be vacated. I am troubled, however, by the majority's decision to base its holding solely on its construction of the Records Access Rule. Because I believe that rationale will allow regulatory agencies to achieve the very "end-run" that the majority apparently wishes to avoid, I write separately.

As a threshold matter, I agree with the majority that under the Records Access Rule, OSHA's version of the work product doctrine protects this consultant's report. But I am also convinced that the work product doctrine codified in Fed.R.Civ.P. 26(b)(3) applies of its own force, regardless of whether OSHA regulations provide some form of work product protection.

The majority correctly notes that if OSHA had attempted to enforce its subpoenas in district court under 29 U.S.C. § 657(b), Rule 26(b)(3) would have applied

directly. Fed.R.Civ.P. 81(a)(3) provides that

> [t]hese rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.

There is no statute altering the applicability of this rule in proceedings by OSHA to seek judicial enforcement of a subpoena. Indeed, 29 U.S.C. 661(g) expressly provides that proceedings before the Commission itself will be in accordance with the Federal Rules of Civil Procedure unless the Commission has adopted a different rule, which it has not.[2] Thus, in an OSHA subpoena enforcement proceeding in district court, Rule 81(a)(3) would cause Rule 26(b)(3) to apply of its own force, which in my opinion the Supreme Court recognized in *Upjohn Company v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981).[3]

No doubt counsel for OSHA recognized this as well when he advised Phyllis Kyner that the agency preferred not to enforce the subpoena, but instead to issue Bally's a citation for willfully violating the Records Access Rule. It was clear that if OSHA sought directly to enforce the subpoena, Bally's claim of immunity under the work product doctrine was likely to succeed. Because enforcement "under the penalty" of an administrative fine is equally as compelling, OSHA simply had no good reason to move directly to enforce the subpoena.

The majority with good reason expresses concern about such "end-run" tactics, and

---

1. In this circuit we have used the term "doctrine" because it "encompasses both a limited immunity from discovery and a qualified evidentiary privilege." *Westinghouse v. Republic of the Philippines,* 951 F.2d 1414, 1417 (3d Cir. 1991).

2. *The Commission thus held that sec. 661(g) caused Rule 26(b)(3) to apply in this case. While this is a colorable rationale, the fact that no proceeding even existed before the Commission until OSHA decided to cite Bally's makes*

the ground somewhat problematic. I therefore express no view on whether sec. 661(g) provides an independent basis for the applicability of the Federal Rules of Civil Procedure.

3. In *Upjohn* the Court held that the work-product doctrine applies to an Internal Revenue Service summons, but the Court's rationale was not limited to that context alone. *See also United States v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d Cir.1990).

correctly points out that "treat[ing] Bally's claim of work product differently in a citation proceeding than in a subpoena enforcement proceeding would elevate form over substance, and would render OSHA's administrative subpoena power superfluous[.]" Maj. at 1259. Unfortunately, by grounding its holding upon the Records Access Rule rather than Fed.R.Civ.P. 81(a)(3), the majority opens the door for OSHA, or any other agency, to simply eliminate or curtail the work product doctrine by regulation. I think the work product doctrine is too important and too firmly rooted in our jurisprudence and our adversary system of adjudication to permit such a result.

A "strong public policy" underlies the work product doctrine, even outside its usual civil discovery context. *See Upjohn,* 449 U.S. at 398, 101 S.Ct. at 687. Its purpose is to "promote[ ] the adversary system ... by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse Electric Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3d Cir.1991). It recognizes that "[o]ur adversary system cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1014 (1st Cir.1988) (citing cases). I fear without the protection of the work product doctrine, the fruit of counsels' investigations would automatically fall into the hands of their adversaries and could deter them from conducting thorough research at all. *See* Anderson *et al., Special Project: The Work Product Doctrine,* 68 *Cornell L.Rev.* 760, 785 (1983); *cf. Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) ("[m]uch of what is now put down in writing would remain unwritten").

Although finally codified as Fed.R.Civ.P. 26(b)(3) in 1970, the work product doctrine traces its origin in the Supreme Court to *Hickman v. Taylor, supra.* Even before that, lower courts adopted various work product theories as a judicial gloss on the discovery provisions of the Federal Rules of Civil Procedure, which were adopted in 1938. 8 Wright & Miller, *Federal Practice and Procedure,* § 2021. Thus, while the work product doctrine does not have its genesis in the distant mists of the common law, it is sufficiently part of our adversarial jurisprudence not to be dispensed with lightly, and certainly not without a clear statement of Congressional intent. *See Kennedy v. Rubin,* 254 F.Supp. 190, 191–92 (N.D.Ill.1966). The drafters of Fed. R.Civ.P. 81(a)(3) recognized this presumption in favor of applying the Federal Rules of Civil Procedure to subpoena enforcement when they provided for the applicability of the Rules *unless otherwise provided by statute* or court rules.

Congressional intent to override the immunity provided by the work product doctrine is clearly lacking in the OSH Act. Not only does that statute fail to create an exception to Rules applicability, it expressly provides *for* the general applicability of the Federal Rules in commission proceedings. It would be anomalous indeed, then, for the Rules not to apply in a procedure that partakes of a subpoena enforcement proceeding in the way that OSHA's administrative citations did in this case.

Accordingly, I believe, as does the majority, that when the use of a citation and subpoena represent merely two alternative "coercive means by which OSHA [seeks] to obtain the same document," maj. at 1259, the citation procedure is properly equivalent to a subpoena enforcement proceeding. I, however, would hold as a matter of federal common law that Fed.R.Civ.P. 81(a)(3) applies of its own force in such a situation. Any other doctrinal basis for the holding invites OSHA to repromulgate the Records Access Rule without a work product immunity, giving rise to the very elevation of form over substance we all agree must be avoided.

If no work product rule applied to protect this report, Bally's would have had little or no incentive to have its dishwasher emissions tested, because the results would have immediately become available to its adversaries: OSHA, the union and the employee who filed the lawsuit. Moreover,

Bally's would have been without a key piece of information necessary to its defense in our adversary system, whether in an OSHA proceeding or an ordinary tort action. Finally, without this information Bally's might have left the dishwasher in place, perhaps exposing workers to more noxious fumes.

I also point out that a firmly entrenched federal common law work product immunity would benefit OSHA as well as regulated parties. As one commentator has persuasively stated:

> The zone of privacy also removes serious disincentives to thorough preparation. To maximize the facts available in a case, the [agency] must be committed to developing those facts. An [agency which] hopes to take advantage of [its] opponent's diligence will lack this commitment. Absence of a work product doctrine would encourage laziness and a "wait and see" attitude. If an [agency] hopes to obtain crucial information at [its] opponent's expense, [it] may feel no need to expend the effort or resources to do the research independently. This lack of preparation can have two negative effects. First, the [agency] may be so ill prepared that [it] is unable to make intelligent use of the discovery upon which [it] now depends. Second, [it] may be responsible for the loss of significant facts favorable to [its] side which were not developed by the opposition, and hence will never be unearthed.

Anderson *et al., supra,* at 786 (footnotes omitted). Without the work product doctrine, OSHA would be encouraged, as it in fact did here, to avoid testing the dishwasher itself and then simply get the report from its adversary. A strong work product rule gives a regulatory agency charged with protecting the public health and welfare an incentive to seek out information proactively.

A well-recognized concern in any adversary situation is that its champions may become *too zealous in their quest for results.* In law, we share that concern. As a consequence, we have developed strict rules to keep this zeal within acceptable limits. The work product doctrine has become such a rule. I am convinced that it is too beneficial to our system, too much a part of our legal tradition, and too fundamental to our notion of fairness to be exposed to an agency's whim. Congress is certainly free to permit whatever regulatory exception it wishes. But with no express intent to the contrary, I believe that Fed.R.Civ.P. 81(a)(3) applies whenever an agency uses a citation as a surrogate for subpoena enforcement. I do, however, respectfully concur.