**John COTTILLION, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**UNITED REFINING COMPANY, et al., Defendants.**

**C.A. No. 09–140.**

United States District Court, W.D. Pennsylvania.

Dec. 21, 2011.

Tybe A. Brett, Ellen M. Doyle, Joel R. Hurt, Stember Feinstein Doyle Payne & Kravec, LLC, Pittsburgh, PA, for Plaintiffs.

Christopher J. Rillo, Schiff Hardin LLP, San Francisco, CA, Lisa Carey–Davis, Matthew D. Lahey, Schiff Hardin LLP, Chicago, IL, Suzanne M. Arpin, Schiff Hardin LLP, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I. Background

On June 12, 2009, Plaintiffs John Cottillion and Beverly Eldridge filed this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against United Refining Company, the United Refining Company Salaried Employees Pension Plan (the "Plan"), and the Retirement Committee responsible for administering the Plan. On October 26, 2009, Plaintiffs filed an amended complaint wherein they assert (1) a claim for benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), (2) a claim for declaratory relief pursuant to ERISA §§ 502(a)(1)(B), 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), (3) breach of fiduciary duty pursuant to ERISA § 404, 29 U.S.C. § 1104, and (4) a violation of ERISA § 204(g), 29 U.S.C. § 1054(g)(2).[1]

The Plaintiffs' primary contention in this action is that Defendants violated ERISA by attempting to actuarially reduce the amount of early retirement benefits paid to plan participants, such as Plaintiffs, who elected to receive early retirement benefits under the version of the Plan amended and restated effective January 1, 1987 (the "1987 Plan"). Specifically, Plaintiffs contend that the 1987 Plan clearly provides for unreduced benefits and that, from 1988 through 2006, Defendants interpreted the 1987 Plan and paid unreduced benefits accordingly. In 2006, however, Defendants began actuarially reducing the benefit paid to class members and sought repayment from class members, such as Plaintiffs, who were paid at an unreduced rate in the past. Plaintiffs challenge this reduction of benefits as an improper attempt to retroactively interpret the Plan in a manner inconsistent with its terms. Defendants counter that the payment of unreduced benefits from 1988 through 2006 was the result of a mistake made by the plan administrator which was properly corrected. Defendants also note that they submitted a successful petition through the Voluntary Correction Program ("VCP") of the Internal Revenue Service ("IRS") in order to maintain the Plan's ERISA status.

In response to requests for production of documents, Defendants produced three privilege logs. The first, Exhibit A, covers documents produced by Defendants. The second, Exhibit B, covers documents produced by Buck Consultants, the entity which served as Defendants' actuarial consultant prior to 2002. The third, Exhibit C, covers documents produced by Towers Watson, Defendants current actuarial consultant. Defendants contend that each of the documents listed in the three privilege logs are protected by the attorney-client privilege and/or the work product doctrine.

On February 16, 2011, Plaintiffs filed the instant motion to compel production of documents, arguing that many of the documents listed in the various privilege logs are not protected from disclosure because they do not satisfy the requirements of the attorney-client privilege or because they fall within the scope of an exception to the privilege. The documents have been submitted to the Court for *in camera* review. This matter is now ripe for consideration.

### II. Applicable Law

When called upon to evaluate the nature and scope of an evidentiary privilege, federal courts must "engage in the sort of case-by-case analysis that is central to common-law adjudication." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3rd Cir.2007) (citing *Upjohn Co. v. United States*, 449 U.S.

---

1. Plaintiffs' motion for leave to file a second amended complaint is currently pending.

383, 386, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). As such, I must individually consider each of the challenged documents listed on the privilege log to determine to what extent any is entitled to protection from disclosure. Before conducting this individualized analysis, however, a review of the governing legal principles is warranted.

### A. Attorney–Client Privilege

 Defendants primarily contend that the documents listed on the three privilege logs are shielded from discovery by the attorney-client privilege. In order to encourage "full and frank communication between attorneys and their clients," *Wachtel*, 482 F.3d at 231, the attorney-client privilege "protects communications between attorneys and clients from compelled disclosure." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3rd Cir.2007). The privilege applies only to a "communication … made between privileged persons … in confidence … for the purpose of obtaining or providing legal assistance for the client." *Id.* (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000)). As such, a party seeking to invoke the privilege bears the burden of demonstrating that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Asousa Partnership*, 2005 WL 3299823, *2 (Bankr.E.D.Pa.2005) (citing *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3rd Cir.1994)). Because the attorney-client privilege constricts the truth-finding process, the privilege is to be construed narrowly. *Westinghouse Electric Corp. v.*

*Republic of the Philippines*, 951 F.2d 1414, 1423 (3rd Cir.1991).

 Because the purpose of the privilege "is to insure open disclosure between client and attorney, the privilege only protects client/attorney communications." *See Barr Marine Products, Co. v. Borg–Warner Corp.*, 84 F.R.D. 631, 634 (E.D.Pa.1979). Thus, "a communication between the attorney and any third party not the client is not privileged even if the information contained therein is then conveyed by the attorney to the client." *Id.* A communication is not made in confidence, and, therefore, is not privileged if persons other than the client, the attorney, or their agents are present. *In re Teleglobe*, 493 F.3d at 361. Similarly, if an otherwise privileged communication is disclosed to a third party by the client, then the privilege has been waived. *Id.*

 The privilege may also be waived in the corporate context "if the communications are disclosed to employees who did not need access to them." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D.Pa. 2005) (citing *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, *5 (N.D.Ill. 1987)). This waiver applies only "when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company." *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D.Pa.1997).

 Another form of waiver occurs when the holder of the privilege asserts a claim or a defense that places his or her counsel's advice at issue in the litigation. *See Rhone–Poulenc Rorer Inc. v. The Home Indemnity Company*, 32 F.3d 851, 863 (3rd Cir.1994). The most common example of this type of waiver is when a client files a malpractice action against the lawyer or asserts reliance on the advice of counsel as an affirmative defense. *Id.* For example, when a litigant's state of mind is at issue, such as in an action for willful patent infringement, the privilege will be waived if the party contends that it relied upon the advice of counsel as an essential element of its defense. *Id.* (citing *Mellon v. Beecham Group PLC*, 1991 WL 16494

(D.N.J.1990)); *see also Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir.1992) (party's claim that its tax position was reasonable because it was based on advice of counsel put that advice in issue and waived the privilege); *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888) (client waives privilege by alleging as a defense that she was misled by counsel). The hallmark of an advice-of-counsel waiver is that the party "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone–Poulenc,* 32 F.3d at 863. As noted by the Third Circuit:

> Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Id.* (citing, *e.g., North River Insurance Company v. Philadelphia Reinsurance Corp.,* 797 F.Supp. 363, 370 (D.N.J.1992)).

■■■ Plaintiffs contend that the attorney-client privilege has been waived with respect to a large number of the documents listed on the privilege logs because those documents were disclosed to Defendants' actuarial consultants, Buck Consultants and/or Towers Watson, or consist of direct communications between counsel or the client and the actuarial consultants. Although there is no accountant-client privilege, *see Couch v. United States,* 409 U.S. 322, 334, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the attorney-client privilege may attach to communications with an accountant "where the client, or the client's attorney, retains an accountant for the purpose of obtaining or providing legal advice." *See United States v. Antolini,* 271 Fed.Appx. 268, 271 n. 1 (citing *United States v. Kovel,* 296 F.2d 918, 922 (2nd Cir.1961)). "[W]hat is vital to the assertion of the attorney-client privilege by an accountant is that the information or the records sought to be withheld as privileged contain confidential material transmitted by or to the client for the purpose of obtaining legal advice from the attorney; if what is sought is only accounting services or the advice of the accountant, or if what is transmitted is not material intended to be confidential, no privilege exists." *United States v. Schmidt,* 343 F.Supp. 444, 446 (D.C.Pa.1972) (quoting *Kovel,* 296 F.2d at 922). Thus, "courts have taken an expansive view of protected communications between independent contractors and counsel where the outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice." *In re CV Therapeutics, Inc.,* 2006 WL 1699536, *6 (N.D.Cal.2006) (citing *In re Bieter Co.,* 16 F.3d 929, 936 (8th Cir.1994)).

■■■ The critical inquiry, as noted above, is whether a communication involving a third party acting as an agent of the attorney or as an employee was made for a legal purpose. *Kovel,* 296 F.2d at 922. "If the third party consultant is involved in the giving of legal advice, the privilege obtains." *In re CV Therapeutics,* 2006 WL 1699536, at *6 (citing *SmithKline,* 232 F.R.D. at 476–77). However, "[i]f what is sought is not legal advice but only accounting service ... of if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Kovel,* 296 F.2d at 922.

## B. Fiduciary Exception

In seeking to compel production of a large number of documents listed on the three privilege logs submitted to the Court for *in camera* inspection, Plaintiffs rely, in large measure, on the fiduciary exception to the attorney-client privilege. The fiduciary exception stems from the principle that an ERISA fiduciary has an obligation "to provide full and accurate information to the plan beneficiaries regarding the administration of the plan" including the obligation to "make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." *In re Long Island Lighting Co. (LILCO),* 129 F.3d 268, 271–72 (2nd Cir.1997) (citing *Martin v. Valley National Bank,* 140 F.R.D. 291, 322 (S.D.N.Y.1991)). This is because, in the fiduciary context, "it is the beneficiary, rather than the trustee, who is

the 'client'" for purposes of the attorney-client privilege. *Wachtel*, 482 F.3d at 232; *see also Washington–Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C.1982) ("When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries.").

Consistent with this principle, many courts have held that "an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *LILCO*, 129 F.3d at 272; *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir.1992); *Fausek v. White*, 965 F.2d 126, 132–33 (6th Cir.1992); *Bland v. Fiatallis North Am. Inc.*, 401 F.3d 779, 787–88 (7th Cir.2005); *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir.1999); *see also Wachtel*, 482 F.3d at 229 ("We recognize that in a number of circuits it is well-settled that the fiduciary exception can apply to ERISA fiduciaries."). In other words, "the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty." *Bland*, 401 F.3d at 788.

The Third Circuit has yet to explicitly apply the fiduciary exception in the context of ERISA fiduciaries. *Wachtel*, 482 F.3d at 226 ("[W]e have not yet had the opportunity to decide whether the [fiduciary exception] should apply within our circuit."). In *Wachtel*, the plaintiffs invoked the fiduciary exception in an attempt to compel production of communications between counsel and an insurance company charged with administrating the plaintiffs' ERISA-regulated health plan. *Id.* The Third Circuit began its analysis by noting that the primary justification for the exception is "premised on both the beneficiaries' right to inspection and their identity as the 'real' clients." *Id.* at 233. Where the interests of the fiduciary and the beneficiaries are sufficiently divergent, however, the Court recognized that the primary justification for the exception would no longer apply. *Id.* at 234. In *Wachtel*, the fiduciary/defendant was an insurance company that determined eligibility for health care benefits under an ERISA-regulated plan and, when appropriate, paid those benefits to the beneficiaries. *Id.* The Court noted that, in such situations, "the fund from which monies are paid is the same fund from which the insurance company reaps its profits," creating a conflict between the insurer's profit motive and the interests of the beneficiary. *Id.* at 235 (quoting *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378–79 (3rd Cir.2000)). As a result of that conflict, the Court held that "the plaintiff-beneficiaries [were] not the "real" clients obtaining legal representation" and, therefore, the fiduciary exception to the attorney-client privilege did not apply. *Id.* at 234.

▮ Because the Court determined that the health care insurer in *Wachtel* was not the type of ERISA fiduciary to which the fiduciary exception would ordinarily apply, it declined to consider whether the exception might apply to other ERISA fiduciaries. *Id.* at 226 ("We decline to make that decision today because we hold that, even if we were to adopt the fiduciary exception, the exception would not apply to the defendants in this case."). However, the Court recognized that "in a number of circuits it is well-settled that the fiduciary exception can apply to ERISA fiduciaries." *Id.* at 229 (citing, *e.g.*, *LILCO*, 129 F.3d at 272; *Wildbur*, 974 F.2d at 645; *Bland*, 401 F.3d at 787–88; *Mett*, 178 F.3d at 1062). The Court also acknowledged that several district courts within the Third Circuit have previously recognized and applied the exception. *Id.*; *see, e.g.*, *Arcuri v. Trump Taj Mahal Associates*, 154 F.R.D. 97, 106 (D.N.J.1994); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63 (D.N.J.1990); *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 596–98 (E.D.Pa. 1989); *Valente v. PepsiCo*, 68 F.R.D. 361, 366–69 (D.Del.1975). Finally, and most significantly, the Court took care to contrast the health care insurance plan in *Wachtel* from a plan involving "actuarially determined benefit funds maintained by employers (especially in the pension area) that usually cannot be recouped by the employer or directly redound to its benefit." *Id.* at 234–35 (quoting *Pinto*, 214 F.3d at 378–79). It is precisely the latter type of plan which is at issue in the

instant case. Accordingly, I join with the majority of courts which have held that the fiduciary exception is applicable to ERISA fiduciaries such as Defendants and will consider its application to the documents at issue.

Defendants contend that, even if the fiduciary exception is applicable in this circuit, many of the documents sought by Plaintiffs are still protected because they fall within one of "two types of situations in which the fiduciary exception does not apply." *Wachtel,* 482 F.3d at 233. The first of these, the "settlor exception," distinguishes between "fiduciary acts and settlor acts, the former being discretionary acts of plan administration and the latter involving the adoption, modification, or termination of an employee benefit plan." *Id.* (citing *Aetna Health Inc. v. Davila,* 542 U.S. 200, 220, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Lockheed Corp. v. Spink,* 517 U.S. 882, 891, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996)); *see also Beck v. PACE Intern. Union,* 551 U.S. 96, 101–02, 127 S.Ct. 2310, 168 L.Ed.2d 1 (2007). Courts have held that the fiduciary exception is inapplicable to settlor acts "because such acts are more akin to those of a non-fiduciary trust settlor than they are to those of a trustee." *Id.* (citing *Lockheed,* 517 U.S. at 891, 116 S.Ct. 1783); *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 718 (6th Cir.2000) ("[E]mployers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust."). Thus, for example, "where the fiduciary makes a decision to amend or terminate an employee benefits plan ... the attorney-client privilege is not waived for documents related thereto." *In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,* 1994 WL 6883, *4 (E.D.Pa.1994).

The second relevant distinction, commonly referred to as the "liability exception," recognizes that a fiduciary who seeks the advice of counsel for its own personal defense in anticipation of adversarial proceedings against its beneficiaries retains the attorney-client privilege because, in such sit-

uations, the beneficiaries are clearly not the "real" client. *Wachtel,* 482 F.3d at 233. The Ninth Circuit has delineated the liability exception as follows:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Mett,* 178 F.3d at 1063–64. In other words, "when a plan fiduciary retains counsel and seeks legal advice for his or her own protection against plan beneficiaries, the 'legal fiction of "trustee as representative of the beneficiaries" is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust.'" *Tatum v. R.J. Reynolds Tobacco Co.,* 247 F.R.D. 488, 493 (M.D.N.C.2008) (quoting *Mett,* 178 F.3d at 1065). Whether any particular communication falls within this liability limitation requires "close examination of the circumstances and whether the legal advice to the plan fiduciary can be considered in anticipation of litigation, as opposed to advice obtained as part of the fiduciary's ordinary administration of the plan." *Id.* at 497 (citing, *e.g., Wachtel,* 482 F.3d at 233). The critical inquiry with respect to the liability exception is whether there exists a "divergence of interests and a threat of litigation" such that it is warranted for the fiduciary to obtain confidential advice from counsel and assert attorney-client privilege on the matter against the beneficiary. *Id.* at 498 (citing *Mett,* 178 F.3d at 1063–64; *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 645 (5th Cir. 1992)).

## C. Work–Product Doctrine

For many of the documents listed on the privilege logs, Defendants contend that, even if the attorney-client privilege does not apply, those documents are alternatively entitled to protection on the basis of the work-product

doctrine. Federal Rule of Civil Procedure 26(b)(3) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without undue hardship, [to] obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3). Pursuant to the work-product doctrine, "there are 'two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery'' and requires a heightened showing of extraordinary circumstances." *In re Cendant Sec. Litig.*, 343 F.3d 658, 663–64 (3rd Cir. 2003). The protections of the work-product doctrine extend to "materials prepared by an agent of the attorney, provided that material was prepared in anticipation of litigation." *Ford Motor Co.*, 110 F.3d at 967. The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine. *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3rd Cir.1982).

The critical inquiry in determining whether material is protected by the work-product doctrine is whether the material was "prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3rd Cir.1990). To this end, the Third Circuit "has adopted a 'two part test for ascertaining whether the documents or things at issue should be protected.'" *Westwood Products, Inc. v. Great American E. & S Ins. Co.*, 2011 WL 3329616, *11 (D.N.J. 2011) (quoting *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 306–07 (D.N.J.2008)). The first inquiry is whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation" in light of "the nature of the document and the factual situation in the particular case." *Id.* (citing, *e.g., Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3rd Cir.1993)). "The second inquiry 'is whether the documents were prepared primarily for the purpose of litigation, ... as documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product.'" *Westwood Products*, 2011 WL 3329616 at *11 (quoting *Sealed Air*, 253 F.R.D. at 307).

The doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Martin*, 983 F.2d at 1260. However, the doctrine requires only that "the material be prepared in anticipation of *some* litigation, not necessarily in anticipation of the particular litigation in which it is being sought." *Ford Motor Co.*, 110 F.3d at 967 (emphasis in original). Specific litigation need not be threatened before a document can be considered to have been prepared in anticipation of litigation. *In re Processed Egg Products Antitrust Litigation*, 2011 WL 4974269, *5 (E.D.Pa.2011) (citing *Hydramar, Inc. v. Gen. Dynamics Corp.*, 115 F.R.D. 147, 150 n. 3 (E.D.Pa.1986)).

### III. *Analysis*

Before considering the documents at issue on an individualized basis, I note that certain issues raised by Plaintiffs are amenable to generalized discussion or summary disposition. First, Plaintiffs contend that Defendant has waived the attorney-client privilege with respect to a number of the documents listed on the privilege logs because Defendants have indicated that they relied on outside counsel John Owsen's advice in submitting a petition through the Voluntary Correction Program to alter the benefits paid to Plaintiffs. I disagree. Defendant is not attempting to prove a defense based upon any communication with Owsen relative to the VCP petition. *Rhone–Poulenc*, 32 F.3d at 863 ("The advice of counsel is placed in issue where the client asserts a

claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."). Accordingly, the following documents which Plaintiff challenges solely on the basis of the waiver-at-issue doctrine remain privileged: A–16, A–47, A–51, A–53, A–192, A–194, A–195.

■ Secondly, with respect to the liability limitation to the fiduciary exception to the attorney-client privilege, the critical question, as noted above, is at what point the interests of the beneficiaries have sufficiently diverged from those of the Plan trustees so as to justify the latter's assertion of the attorney-client privilege. *Tatum*, 247 F.R.D. at 493; *Mett*, 178 F.3d at 1063–64; *Wildbur*, 974 F.2d at 645. In the instant case, I note that, as a general matter, the requisite divergence occurred in late 2005/early 2006 when Defendants took concrete steps to actuarially reduce the amount of benefits paid to retirees who had previously been receiving unreduced benefits and to recoup alleged overpayments. Although courts have noted that the "prospect of post-decisional litigation against the plan by a disappointed beneficiary can exist whenever the plan denies a claim" and, as such, is typically not sufficient on its own to trigger the liability limitation, *Geissal*, 192 F.R.D. at 625, this case presents a more compelling divergence of interests than a simple denial of benefits. When Defendants attempted to reduce benefits that had been paid at an unreduced rate for years and to reclaim past overpayments from beneficiaries, at that point, a serious and significant threat of litigation had materialized. *See Mett*, 178 F.3d at 1064 ("Although no legal action was then pending ... the employees had begun asking difficult questions regarding the financial conditions of the plans. Trouble was in the air."). Accordingly, I hold that documents created or communicated after that time may fall within the liability limitation to the fiduciary exception if they concern strategy or legal advice related to potential litigation. *Mett*, 178 F.3d at 1064 (protecting documents from disclosure which "were plainly 'defensive on the trustees' part' and aimed at advising the trustees 'how far they were in peril.' ") (citations omitted). This analysis must be undertaken on a case-

by-case basis. *Id.* at 1066–67 (noting that "communication-by-communication analysis ... is crucial if the attorney-client privilege and the fiduciary exception are to coexist.").

Third, Defendants contend that draft documents that were subject to revision by Owsen prior to release are categorically protected by the attorney-client privilege, despite that they might otherwise fall within the fiduciary exception. Defendants cite *Macario v. Pratt & Whitney Canada, Inc.*, 1991 WL 6117, *1 (E.D.Pa.1991), for the proposition that a draft document which is contingent upon an attorney's approval and revision remains protected until a final draft is achieved. *Id.* In *Macario*, the primary issue was whether the requisite expectation of confidentiality attached to an early draft of a press release that had been conveyed to an attorney for review, despite the fact that the information contained in the release was eventually intended for public dissemination. *Id.* The court held that, although the client did not intend for the information contained in the press release to remain confidential forever, it was "contingent on [counsel's] approval and subject to his revision" at the time that it was conveyed, and therefore, the client "intended the document to remain confidential until a final draft was achieved." *Id. See also Fischel v. The Equitable Life Assurance*, 191 F.R.D. 606, 610 (N.D.Cal. 2000) (granting protection to "internal documents in which inside counsel has reviewed and commented on drafts of response letters from management to agents' inquiries, complaints and claims").

While *Macario* stands for the proposition that a draft document may be entitled to protection if it otherwise meets the requirements of the attorney-client privilege, nothing in that case (or any other case discovered through this Court's independent research) supports Defendants' suggestion that *any* draft document which is subject to revision by counsel is automatically entitled to the protections of the attorney-client privilege even if the communication would not otherwise fall within the scope of the privilege or would otherwise be excepted. To the contrary, draft documents, like any other communication over which attor-

ney-client privilege is asserted, must be individually analyzed to determine whether the attorney-client privilege applies and, if so, whether it falls within the scope of the fiduciary exception (or any of the exceptions thereto). This approach is reflected in *Fischel*, for example, wherein the court granted a motion to compel with respect to draft documents reviewed by counsel "that [were] intended to describe or communicate changes in plan benefits to beneficiaries" rather than "render[ ] legal advice to the trustees regarding the substance or advisability of those changes." *Id.* at 610. In contrast, the court denied the motion to compel with respect to draft documents that fell within the liability limitation to the fiduciary exception. *Id.* ("[T]hese letters are responses to specific agents who have challenged the Equitable's decision to restrict or alter their benefits. Clearly, the advice given is rendered in anticipation of litigation between the company and its agents."). Consistent with this approach, I will individually analyze the draft documents listed on the privilege log to determine whether they are entitled to protection.

I now direct my analysis to the individual documents listed on the privilege logs.

### A) Privilege Log—Defendants' Production

■ Document A–2 (a duplicate of which appears on the privilege log at A–31) is a March 22, 2006 email from outside counsel John Owsen to Retirement Committee member Larry Loughlin ("Loughlin") and copied to Greg Kistler ("Kistler") of Towers Watson ("Towers"), concerning a proposed response to the terminated vested Plan participants. The email clearly conveys legal advice with respect to potential litigation by plan participants and, as such, falls within the liability limitation to the fiduciary exception to the attorney-client privilege. *See Mett,* 178 F.3d at 1063–64 (fiduciary who seeks advice of counsel in anticipation of litigation by plan beneficiaries retains privilege); *Wachtel,* 482 F.3d at 233. Kistler's inclusion does not

waive the privilege as to this document because his involvement as a consultant at the direction of Owsen was for the purpose of assisting with the provision of legal advice. *See SmithKline,* 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics,* 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

■ Document A–3 (a duplicate of which appears on the privilege log at A–32)[2] is a March 20, 2006 email from Kistler to Loughlin discussing issues related to the repayment of benefit overpayments to Plan beneficiaries. This communication concerns only accounting issues related to the administration of the Plan. As such, this document is not covered by the attorney-client privilege. Neither is the email protected on the basis of the attorney work-product doctrine. Although the privilege log indicates that the communication may have taken place at Owsen's direction, it appears to have been prepared for a nonlitigation purpose—the Plan's attempt to recoup overpaid benefits—rather than in anticipation of litigation. *Martin,* 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.,* 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ... not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

■ Document A–4 (a duplicate of which appears at A–33) is a March 20, 2006 email from Owsen to Loughlin, Kistler and another member of the Retirement Committee, Turfitt, discussing legal issues related to the Plan's attempt to petition the IRS for a plan correction. Kistler's inclusion does not waive the privilege as to this document because his involvement as a consultant at the direction of Owsen was for the purpose of assisting

---

**2.** Document A–18 also compiles the email documents listed on the privilege log at A–3 and A–4 into a single email string. Because those documents are addressed individually here, the document listed at A–18 need not be separately addressed.

with the provision of legal advice. *See SmithKline,* 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics,* 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

Documents A–5 through A–9 (duplicates of which appear at A–34 through A–38) consist of a string of email correspondence sent between March 7–9, 2006, between Owsen, Loughlin, Turfitt, Kistler, and other Towers consultants wherein Owsen and Kistler discuss the ongoing IRS VCP submission and potential legal strategies relative to the VCP submission and any subsequent complains from beneficiaries. The emails contain input from Towers, gathered at the direction of Owsen, for the purpose of assisting him in providing legal advice and formulating legal strategy with respect to the VCP submission and the recoupment of benefits overpayments on behalf of the Plan. As such, the attorney-client privilege has not been waived with respect to these documents. *See Smith-Kline,* 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics,* 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

■ Document A–10 (a duplicate of which appears at A–39, A–79 and A–126) is a November 21, 2005 email from Owsen to Kistler and other Towers consultants wherein Owsen directs Kistler to provide and interpret financial data in order to assist Owsen in giving legal advice and formulating legal strategy with respect to the VCP submission and the recoupment of benefits overpayments on behalf of the Plan. As such, the attorney-client privilege has not been waived with respect to these documents. *See Smith-Kline,* 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics,* 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

Document A–11 (a duplicate of which appears at A–40) consists of Kistler's November 22, 2005 response to Owsen's email at A–10 and is privileged for the same reasons. PRIVILEGED.

■ Documents A–12 and A–13 (duplicates of which appear at A–29/A–30, A–41/A–42 and A–127/A–128) consist of emails from Owsen to Loughlin send on October 31 and November 1, 2005, which clearly convey legal advice with respect to potential litigation by plan participants and, as such, fall within the liability limitation to the fiduciary exception to the attorney-client privilege. *See Mett,* 178 F.3d at 1063–64 (fiduciary who seeks advice of counsel in anticipation of litigation by plan beneficiaries retains privilege); *Wachtel,* 482 F.3d at 233. Kistler's inclusion does not waive the privilege because I have previously concluded that his involvement as a consultant at the direction of Owsen was for the purpose of assisting with the provision of legal advice. *See SmithKline,* 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics,* 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

■ Document A–14 (duplicates of which appear at A–43 and A–128) consists of an email sent from Owsen to Loughlin on October 11, 2005, wherein Owsen forwards his proposed response to an inquiry from a beneficiary with respect to the reduction in benefits. This message contains legal advice related only to matters of plan administration and, as such, falls within the fiduciary exception to the attorney-client privilege. Moreover, the communication appears to have been prepared in the ordinary course of responding to an inquiry from a plan beneficiary, rather than for use in anticipated litigation, and, consequently, does not fall within the scope of the work-product doctrine. *Martin,* 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.,* 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific

claim supported by concrete facts which would likely lead to litigation in mind, ... not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

Document A–15 consists of an undated email from Barb Kulinski of the URC Retirement Committee to Kistler and Owsen. The email does not request legal advice and, as such, is not privileged. NOT PRIVILEGED.

 Document A–17 is an undated draft letter from Loughlin to a beneficiary, Jerry Fankhouser, apparently created late in 2006 in response to the latter's challenge to the reduction of his benefits under the Plan. As an initial matter, the document itself does not constitute a communication to or from an attorney for the purpose of securing or conveying legal advice. Moreover, to the extent that the document represents a draft that was communicated to counsel for the purpose of securing legal advice and review, the document clearly reflects a core fiduciary function—Defendants' response to a request for a benefits determination by a beneficiary—and, as such, falls within the fiduciary exception to the attorney-client privilege. Finally, the document appears to have been created in the ordinary course of business and, as a result, is not entitled to protection under the work-product doctrine. *See Martin,* 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.,* 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ... not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

Document A–19 consists of a cover letter dated January 18, 2008, from Mary Phillips, a legal assistant to General Counsel John Wagner, to Bob Coury, a senior consultant at Towers. This communication does not request or convey legal advice. As such, the attorney-client privilege does not apply. NOT PRIVILEGED.

 Document A–20 is an October 5, 2006 email from David Pittman of Towers to Loughlin, copied to several other Towers consultants, providing actuarial information to Loughlin for the purpose of crafting a response to an inquiry from a beneficiary concerning his benefits reductions. With one exception, the email consists entirely of actuarial calculations and explanations provided by Towers for the purpose of addressing concerns raised by the beneficiary as to the accuracy of the actuarial data previously provided. As such, the information in the email was not "transmitted ... to the client for the purpose of obtaining legal advice" but represents "only accounting services or the advice of the accountant." *Schmidt,* 343 F.Supp. at 446 (quoting *Kovel,* 296 F.2d at 922). In fact, Pittman's response explicitly defers to counsel with respect to any legal issues raised by the beneficiary, making clear that his response represents only actuarial advice. Alternatively, to the extent that the email could be construed as a "communication[ ] between independent contractors and counsel where the outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice," *see In re CV Therapeutics, Inc.,* 2006 WL 1699536, *6, Pittman's communication would fall within the scope of the fiduciary exception because it concerns the administration of benefits on behalf of a beneficiary. In either case, the document would not be protected by the attorney-client privilege. Finally, the document appears to have been prepared for a nonlitigation purpose—the Plan's attempt to recoup overpaid benefits—rather than in anticipation of litigation and, accordingly, is not protected by the work-product doctrine. *Martin,* 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.,* 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ... not merely assembled in the ordinary course of business or for other nonlitigation purposes.").

The aforementioned exception is section "D)" of Pittman's email which specifically provides information and advice to Loughlin

for the express purpose of seeking input from legal counsel. This paragraph is protected by the attorney-client privilege and may be redacted before the document is produced. NOT PRIVILEGED SUBJECT TO REDACTION.

Document A–21 is a forward of the email listed at document A–20 from Pittman to Kulinski on October 5, 2006, and is not privileged for the same reasons set forth in the discussion of document A–20. NOT PRIVILEGED.

█ Documents A–23 and A–25 represent two different undated drafts of a letter to a beneficiary, Frederick Hane, prepared by Owsen in response to Hane's objection to his reduction in benefits. The subject matter of each document clearly describes or communicates changes in the administration of benefits to a beneficiary and, as such, the communications fall entirely within the scope of the fiduciary exception. *See Washington–Baltimore Newspaper Guild*, 543 F.Supp. at 909 (attorney-client privilege does not apply to communications "dealing with the administration of an employees' benefit plan."); *Fischel*, 191 F.R.D. at 610 (applying the fiduciary exception to drafts of letters communicating changes in benefits to beneficiaries and ordering production). Moreover, the revisions attached to the draft letters appear to be directed towards clarifying and editing the language used for the purpose of articulating a clear response, rather than to render legal advice to Defendants regarding matters of liability. *Fischel*, 191 F.R.D. at 610 (concluding that attorney revisions were not protected where "the comments ... are focused on word smithing and editing the language disclosing plan changes for the benefit of the beneficiaries, as opposed to rendering legal advice to the trustees regarding the substance or advisability of those changes."). NOT PRIVILEGED.

█ Documents A–22 and A–24 consist of emails exchanged on July 24 and 25, 2006 between Kistler, Owsen and Loughlin wherein they discuss proposed corrections and revisions to the draft letters to Hane listed at A–23 and A–25. Similarly, document A–26 is a July 20, 2006 email from Kistler to Loughlin providing actuarial and accounting infor-

mation to Loughlin for the express purpose of assisting Owsen in crafting a response to Hane's inquiry concerning his benefits reductions. Any legal advice sought through these communications involves the communication of a change in benefits to a beneficiary and, as such, the communications fall entirely within the scope of the fiduciary exception. *See Washington–Baltimore Newspaper Guild*, 543 F.Supp. at 909 (attorney-client privilege does not apply to communications "dealing with the administration of an employees' benefit plan."); *Fischel*, 191 F.R.D. at 610 (applying the fiduciary exception to drafts of letters communicating changes in benefits to beneficiaries and ordering production). NOT PRIVILEGED.

Documents A–27 and A–28 consist of undated draft letters composed by Owsen in late 2006 in response to communications from a beneficiary, Robert Wenom, concerning the reduction of his benefits under the Plan. As an initial matter, the documents themselves do not constitute communications between an attorney and his client for the purpose of securing or conveying legal advice. Moreover, the documents clearly reflect a core fiduciary function—Defendants' response to a request for a benefits determination by a beneficiary—and, as such, fall within the fiduciary exception to the attorney-client privilege. Additionally, the documents appear to have been created in the ordinary course of business and, as a result, are not entitled to protection under the work-product doctrine. *See Martin*, 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, ... not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

█ Document A–44 is an email sent by Al Trezza ("Trezza"), a consultant at Towers, to Kulinski and Loughlin on July 22, 2005 wherein Trezza provides suggestions and comments with respect to communicating with plan beneficiaries concerning the reduc-

tion in benefits. The email does not request or describe legal advice and concerns issues entirely related to the administration of the Plan. As such, this document is not covered by the attorney-client privilege. Neither is the email protected on the basis of the attorney work-product doctrine. Although the privilege log indicates that the communication may have taken place at Owsen's direction, it appears to have been prepared in order to effectively communicate benefits changes to beneficiaries rather than in anticipation of litigation. *Martin*, 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, . . . not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

█ Document A–45 is a November 4, 2005 email from Kistler to Owsen, Loughlin, and other Towers consultants wherein Kistler provides Owsen with information and comments pertaining to a draft of an IRS ruling request letter. This communication falls within the fiduciary exception to the attorney-client privilege. NOT PRIVILEGED.

█ Document A–46 is a November 2, 2005 email from Trezza to Kulinski discussing issues related to benefits calculations. The email does not request, convey or describe legal advice and concerns issues entirely related to the administration of the Plan. As such, this document is not covered by the attorney-client privilege. Neither is the email protected on the basis of the attorney work-product doctrine. Although the privilege log indicates that the communication may have taken place at Owsen's direction, it appears to have been prepared in order to effectively communicate benefits changes to beneficiaries rather than in anticipation of litigation. *Martin*, 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were

created with a specific claim supported by concrete facts which would likely lead to litigation in mind, . . . not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

█ Documents A–48 and A–49 are undated drafts of a form letter used by Defendants to communicate with beneficiaries concerning the contemplated reduction of benefits and the results of the IRC VCP process. As an initial matter, the documents do not facially constitute confidential communications to or from an attorney for the purpose of securing or conveying legal advice. Moreover, to the extent that the documents represent drafts that were communicated to counsel for the purpose of securing legal advice and review, they clearly fall within the fiduciary exception to the attorney-client privilege because they relates entirely to the administration of a benefits plan. Finally, the documents appear to have been created in the ordinary course of business and, as a result, are not entitled to protection under the work-product doctrine. *See Martin*, 983 F.2d at 1258; *Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C.Cir.1993) (holding that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts which would likely lead to litigation in mind, . . . not merely assembled in the ordinary course of business or for other nonlitigation purposes."). NOT PRIVILEGED.

Document A–50 is an undated list of 16 plan participants and their pay status. This communication does not request or convey legal advice. NOT PRIVILEGED.

█ Document A–52 is an email exchange dated September 1, 2005, between Owsen and Kulinski discussing a request from a beneficiary for copies of various Plan documents. Even if this email were construed as a request for legal advice, it concerns a core fiduciary function and, as such, falls within the fiduciary exception to the attorney-client privilege. NOT PRIVILEGED.

█ Document A–54 consists of a 2001 letter from Owsen to Loughlin discussing amendments to the URC Pension Plan and attaching a document reflecting the board's consideration of the amendment. This document clearly pertains to the "adoption, modification, or termination" of an employee benefit plan and, as such, falls squarely within the settlor function exception. *Wachtel,* 482 F.3d at 233; *Lockheed,* 517 U.S. at 891, 116 S.Ct. 1783; *Hunter,* 220 F.3d at 718 (settlor functions include "establishing, funding, amending, and terminating the trust."). PRIVILEGED.

█ Documents A–55 and A–56 are both 1998 draft versions of Summary Plan Descriptions for the URC Pension Plan prepared by Owsen. A duplicate appears on the privilege log at A–138/A–139. Plan administrators are required by ERISA to provide a "sufficiently accurate" summary plan description to plan beneficiaries and to provide notice of material modifications to a plan. *See* 29 U.S.C. §§ 1024(b); 1022(a); *Baker v. Kingsley,* 2007 WL 7302630 (N.D.Ill.2007). Most courts have held that communications with plan beneficiaries concerning plan benefits and modifications fall under the penumbra of fiduciary functions, rather than settlor functions. *See Id.* at *4 ("Case law confirms that communicating with plan participants and beneficiaries about benefits may be a fiduciary function."); *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 84 (2nd Cir.2001) ("Communicating information about future plan benefits is indeed a fiduciary obligation."); *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 492 (3rd Cir.2000) (holding that a plan administrator acts in a fiduciary capacity "when explaining plan benefits and business decisions about plan benefits to its employees."). Accordingly, the draft Summary Plan Descriptions fall within the fiduciary exception to the attorney-client privilege and must be disclosed. NOT PRIVILEGED.

Document A–58 (duplicates of which appear at A–96, A–102, and A–105) is a memorandum drafted in 1998 by Kyle Waggoner ("Waggoner"), an attorney in Owsen's law office. This document does not appear to request or convey legal advice. Moreover, even if this memo were construed as a request for legal advice, it concerns a fiduciary function and, as such, falls within the fiduciary exception to the attorney-client privilege. NOT PRIVILEGED.

█ Document A–62 is a memorandum drafted in 1997 by Owsen concerning the Plan's funding and actuarial valuations. Courts have widely held that decisions related to funding are "settlor functions which do not implicate fiduciary duties." *In re Wachovia Corp. ERISA Litigation,* 2010 WL 3081359, *11 (W.D.N.C.2010); *Hunter,* 220 F.3d at 718 (funding decisions are settlor functions); *In re RCN Litigation,* 2006 WL 753149, *6 n. 4 (D.N.J.2006) (decisions related to profit sharing contributions and company matching contributions were "not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties"). However, document A–62 does not contain legal advice related to any particular funding decision, but rather, simply collects information and presents an overview of the value of the various funds administered by URC. In my view, this communication is more closely related to plan administration, a fiduciary function, than to any settlor function. As such, it falls within the fiduciary exception to the attorney-client privilege. NOT PRIVILEGED.

Document A–64 consists of a 1996 letter from Owsen to Loughlin concerning a request for copies of the plan and amendments. This communication does not request or convey legal advice. NOT PRIVILEGED.

Documents A–70, A–71, and A–191 consist of successive drafts of an Interoffice Memo between Owsen, Kaemmerer, Loughlin, James Murphy, the Chief Financial Officer for URC, and Turfitt dated August 5 and August 6, 2003. Similarly, Documents A–72 and A–190 appear to represent successive drafts of an Interoffice Memo exchanged between Owsen, Kaemmerer, Loughlin, Murphy and Turfitt dated August 4 and 5, 2003. One or more of these documents form the subject matter of a pending motion to strike filed by Defendants in response to Plaintiffs' request to file a second amended complaint and, consequently, these documents will be addressed in a separate order.

Document A–73 is an August 4, 2003 memorandum from Owsen to Turfitt providing legal advice with respect to settlor functions including funding, modifying, or terminating an employee benefit plan. *Wachtel,* 482 F.3d at 233. PRIVILEGED.

Document A–74 is a July 29, 2003 email from Loughlin to Owsen requesting legal advice concerning funding decisions and other core settlor functions. PRIVILEGED.

Document A–76 is a June 19, 2003 email from Turfitt to Owsen requesting legal advice concerning funding decisions and other core settlor functions. PRIVILEGED.

Document A–77 consists of a 2003 memorandum from Owsen to Kulinski enclosing the standard forms used by URC employees to apply for retirement benefits. This communication does not request or convey legal advice. NOT PRIVILEGED.

Document A–78 is a 2001 memorandum from Owsen to Loughlin discussing the status of various proposals, amendments and modifications related to the various URC pension plans. The content of the memorandum falls within the scope of the settlor exception. PRIVILEGED.

Document A–81 consists of a portion of an undated memorandum from Owsen to Rob Kaemmerer of URC providing legal advice with respect to core settlor functions including funding, modifying, or terminating an employee benefit plan. PRIVILEGED.

Document A–82 is a handwritten note from Kaemmerer to Owsen that does not request legal advice. NOT PRIVILEGED.

Document A–83 consists of a copy of the memorandum previously listed on the privilege log at A–81 and is privileged for the same reasons. PRIVILEGED.

Document A–86 is a 1997 draft document entitled "United Refining Company Unanimous Consent of Directors in Lieu of Meeting," the contents of which reflect the Board's consideration of proposed amendments to the URC pension plans. The privilege log does not indicate that this document was prepared or reviewed by counsel, and the document, on its face, does not convey legal advice. NOT PRIVILEGED.

Document A–88 consists of a page of undated handwritten notes which Defendants attribute to Owsen and which appear to have been made for his own use. The document does not appear to relate to a request for legal advice and there is no indication on the document or the privilege log that the notes were communicated to anyone else for the purpose of securing or conveying legal advice. An attorney's notes to his own files are not privileged unless they reveal confidential communications from the client. *See, e.g., American Nat. Bank and Trust Co. of Chicago v. AXA Client Solutions,* 2002 WL 1058776, *4 (N.D.Ill.2002). NOT PRIVILEGED.

Document A–90 consists of another version of the 1996 letter from Owsen to Loughlin listed on the privilege log as document A–64. As with the previous document, this communication does not convey legal advice. NOT PRIVILEGED.

Document A–93 is a 1998 draft letter from Owsen to Loughlin regarding ongoing revision and review of several draft Summary Plan Descriptions. The document does not appear to convey legal advice. Further, as previously discussed, the provision of Summary Plan Descriptions to beneficiaries is a fiduciary function. *See, e.g., Baker,* 2007 WL 7302630 at *4. NOT PRIVILEGED.

Document A–94 is a November 25, 1998 letter from Owsen to Loughlin requesting review of a draft of the minutes of a retirement committee meeting for corrections, additions or deletions. The document does not contain confidential information or convey or describe legal advice. NOT PRIVILEGED.

Document A–95 consists of an undated handwritten note, most likely composed by Owsen, describing various tasks that he intended to perform. The document does not reveal the content of confidential communications from the client, and there is no indication on the document or the privilege log that the notes were communicated to anyone else for the purpose of providing legal advice. NOT PRIVILEGED.

Documents A–100 and A–101 consist of an email exchange on April 23 and 25,

2003, between Owsen to Loughlin wherein Owsen provides legal advice concerning the proper method of distribution of the Summary Plan Descriptions to Plan beneficiaries. As previously discussed, communications with plan beneficiaries concerning plan benefits and modifications are fiduciary functions. *Baker,* 2007 WL 7302630 at *4. NOT PRIVILEGED.

Document A–114 is a letter dated November 29, 2005 from Owsen to Loughlin, Turfitt and Kaemmerer requesting review of a draft of the minutes of a retirement committee meeting for corrections, additions or deletions. The document does not contain confidential information and does not convey or describe legal advice. NOT PRIVILEGED.

■ Document A–115 consists of the minutes of the 2005 annual meeting of the Salaried Plan Retirement Committee. It is well-settled that "the mere fact that an attorney attended a meeting does not render everything said or done at that meeting privileged." *Pownell v. Credo Petroleum Corp.,* 2011 WL 1045418, *3 (D.Colo.2011) (quoting *Miner v. Kendall,* 1997 WL 695587, *1 (D.Kan.1997)). Rather, the primary consideration "is whether the communications memorialized by the minutes were made for the purpose of obtaining legal advice." *Ford Motor,* 110 F.3d at 965; *Hinsdale v. City of Liberal, Kan.,* 961 F.Supp. 1490, 1494 (D.Kan.1997) ("For communications at [a meeting] to be privileged, they must have related to the acquisition or rendition of professional legal services."). After reviewing document A–115, I conclude that the vast majority of the communications set forth in the minutes reflect ordinary business discussions and issues relating to the committee's fiduciary function, rather than the solicitation or provision of legal advice. However, a few individual portions of the minutes do contain legal advice which would fall within the liability limitation to the fiduciary exception to the attorney-client privilege. Consequently, while the minutes as a whole must be produced, the following portions may be redacted: the last two paragraphs of section VI; all but the first paragraph of section VII; and the final three paragraphs of section XIII. I further note that the minutes are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. PRIVILEGED SUBJECT TO REDACTION.

Document A–116 is a February 27, 2002 letter from Owsen to Loughlin forwarding replacement pages for a draft notebook related to the Salaried Plan. The document does not contain confidential information and does not convey or describe legal advice. NOT PRIVILEGED.

■ Document A–118 is a September 29, 1995 letter from Owsen to an accountant/actuarial consultant named William Wilson requesting actuarial advice for the purpose of providing legal advice to URC with respect to potential plan amendments. Because the document reflects that "the third party consultant is involved in the giving of legal advice," the attorney-client privilege is not waived. *See In re CV Therapeutics,* 2006 WL 1699536, at *6 (citing *SmithKline,* 232 F.R.D. at 476–77); *Kovel,* 296 F.2d at 922. PRIVILEGED.

Document A–119 is a 2003 letter from Owsen to Loughlin advising Loughlin that the final Summary Plan Description was ready to be distributed to beneficiaries. The document does not appear to contain confidential information and does not convey or describe legal advice. Further, as previously discussed, the provision of Summary Plan Descriptions to beneficiaries is a fiduciary function. *See, e.g., Baker,* 2007 WL 7302630 at *4. NOT PRIVILEGED.

Documents A–121 and A–122 each consist of a 1995 letter from Owsen to Naomi Sinnreich forwarding a copy of the URC Board's consent to adopt an amended and restated pension plan for salaried employees. The documents do not contain confidential information and do not request, convey or describe legal advice. NOT PRIVILEGED.

Document A–125 is an April 23, 2007 document entitled Consent in Lieu of Annual Meeting of the Retirement Committee for Salaried Plan & Minutes. As with the board meeting minutes discussed previously, I find that only those "communications memorialized by the minutes [that] were made for the

**312**

purpose of obtaining legal advice" are within the scope of the attorney-client privilege. *Ford Motor*, 110 F.3d at 965. Consistent with this conclusion, this document must be produced, subject to the following redactions: the first two paragraphs of section III; and all of section X. I further note that the remainder of the document is not independently protected by the work-product doctrine because it was prepared in the ordinary course of business rather than in anticipation of litigation. PRIVILEGED SUBJECT TO REDACTION.

Document A–133 is described in the privilege log as a draft version of the 1998 Summary Plan Description for Salaried Employees. The document does not contain confidential information and does not request, convey or describe legal advice. Moreover, the provision of Summary Plan Descriptions to beneficiaries is a fiduciary function. *See, e.g., Baker*, 2007 WL 7302630 at *4. NOT PRIVILEGED.

Document A–137 is the same draft letter from Owsen to Loughlin regarding ongoing revision and review of draft Summary Plan Descriptions that appears on the privilege log at A–93. The document does not appear to contain confidential information and does not request, convey or describe legal advice. Further, as previously discussed, the provision of Summary Plan Descriptions to beneficiaries is a fiduciary function. *See, e.g., Baker*, 2007 WL 7302630 at *4. NOT PRIVILEGED.

Document A–142 is a January 31, 2007 letter from Owsen to Turfitt, the contents of which reflect legal advice concerning settlor functions. PRIVILEGED.

Documents A–143 (a duplicate of which appears at A–145) and A–144 are draft letters from Owsen to Loughlin providing legal advice with respect to the Pension Plan for Salaried Employees in effect in 1998. The contents of these letters concern settlor functions. PRIVILEGED.

 Documents A–149, A–152, A–153 and A–157 represent letters drafted by Owsen in response to requests by independent auditors in connection with the auditors' examination of URC's accounts for the years 2000, 2003, 2007 and 2008. As discussed above, communications between an attorney and an outside accountant are only privileged "if the records sought to be withheld as privileged contain confidential material transmitted by or to the client for the purpose of obtaining legal advice from the attorney." *Schmidt*, 343 F.Supp. at 446 (quoting *Kovel*, 296 F.2d at 922). Where the purpose of the communication is to facilitate accounting services, rather than legal advice, the attorney-client privilege does not apply. *Antolini*, 271 Fed. Appx. at 270 n. 1. Thus, courts have consistently held that "documents exchanged between a company's . . . counsel and its auditors are not protected by the attorney-client privilege." *Vacco v. Harrah's Operating Co.*, 2008 WL 4793719, *5 (N.D.N.Y.2008) (citing *In re John Doe Corp.*, 675 F.2d 482, 488–89 (2nd Cir.1982)); *see also Westernbank Puerto Rico v. Kachkar*, 2009 WL 530131, *3 (D.Puerto Rico 2009) ("Disclosure to outside auditors generally waives the attorney-client privilege."); *U.S. v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir.1982) (attorney-client privilege is waived with respect to information disclosed to outside financial auditors). Because each of the aforementioned letters from Owsen was conveyed to an outside auditor for accounting/audit purposes, the attorney-client privilege does not apply. NOT PRIVILEGED.

 Document A–156 is an undated letter from Owsen to David Hudak of Towers in response to a request for information for purposes of compilation of a valuation report. This attorney/accountant communication does not convey or describe legal advice or solicit input from the accountant in order to assist the attorney in providing legal advice and, as such, it falls outside of the scope of the attorney-client privilege. NOT PRIVILEGED.

Document A–160 is a June 19, 2003 letter from Owsen to Turfitt wherein Owsen provides legal advice with respect to core settlor functions including funding, modifying, or terminating an employee benefit plan. PRIVILEGED.

Document A–161 is a February 14, 2003 email from Owsen requesting information from Kistler for the purpose of assisting

Owsen in providing legal advice relevant to settlor functions. PRIVILEGED.

■ Document A–162 is a 2003 communication from the IRS to Owsen indicating that the IRS had received URC's request for a favorable determination letter. Communications between an attorney and a party who is not the client do not fall within the attorney-client privilege. NOT PRIVILEGED.

Document A–163 is a 2001 letter from Owsen to Buck Consultants seeking comment on an updated draft of the pension plan for salaried employees. This document does not convey or describe legal advice. NOT PRIVILEGED.

■ Document A–178 consists of a draft of an actuarial valuation report for the URC pension plans created by Buck Consultants in 1999. This communication does not request, convey or describe legal advice and appears to reflect only accounting issues related to the administration of the Plan. As such, this document is not covered by the attorney-client privilege. NOT PRIVILEGED.

■ Document A–181 appears to be a legal memorandum created by Owsen concerning the Pension Protection Act of 2006 and its impact on the URC pension plans. The legal advice in the document concerns recommended amendments to the URC plans and falls within the settlor function exception. PRIVILEGED.

Documents A–182 is a memorandum prepared by Owsen concerning pending projects relative to settlor functions such as amending, terminating and modifying various URC pension plans. This document falls within the settlor function exception. PRIVILEGED.

Documents A–183 and A–185 are memoranda prepared by Owsen in 2003 concerning pending projects. The memoranda appear to list the current status of projects for each and every one of Owsen's clients, the majority of which have no relevance to this litigation whatsoever. However, those entries which concern Defendants' pension plans do not appear to reveal confidential communications from the client but, rather, simply list ongoing tasks which Owsen intended to per-

form. These entries are not protected by the attorney-client privilege. *See, e.g., American Nat. Bank,* 2002 WL 1058776 at *4. Consequently, Defendants are ordered to produce only those entries from documents A–183 and A–185 which concern the URC Pension Plans. NOT PRIVILEGED SUBJECT TO REDACTION.

■ Document A–184 (a duplicate of which appears on the privilege log at A–189) consists of an undated email from Owsen to Loughlin reflecting legal advice concerning funding the URC pension plans and other settlor activities. The legal advice contained in the email falls within the scope of the settlor function exception. PRIVILEGED.

■ Document A–187 is an undated document entitled "Pension Plan Updated" drafted by Owsen wherein he summarizes the financial state of the three benefit plans operated by URC. The contents of the document entirely reflect fiduciary matters and, as such, the document falls within the fiduciary exception. NOT PRIVILEGED.

■ Document A–197 consists of the minutes of the December 23, 1998 annual meeting of the Salaried Plan Retirement Committee. As discussed previously, communications memorialized by the minutes of a board meeting are only privileged where they "were made for the purpose of obtaining legal advice." *Ford Motor,* 110 F.3d at 965; *Hinsdale,* 961 F.Supp. at 1494 ("For communications at [a meeting] to be privileged, they must have related to the acquisition or rendition of professional legal services."). After reviewing document A–197, I conclude that the vast majority of the communications set forth in the minutes reflect ordinary business discussions and issues relating to the committee's fiduciary function, rather than the solicitation or provision of legal advice. However, section XIV of the document contains legal advice from Owsen concerning necessary amendments to the Plan, a core settlor function. *Wachtel,* 482 F.3d at 233; *Hunter,* 220 F.3d at 718 (settlor functions include "establishing, funding, amending, and terminating the trust."). As such, that portion of the document may be redacted prior to production. I further note

that the minutes are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. NOT PRIVILEGED SUBJECT TO REDACTION.

Document A–198 consists of the minutes of the December 27, 2000 annual meeting of the Salaried Plan Retirement Committee. The vast majority of the communications set forth in the minutes reflect ordinary business discussions and issues relating to the committee's fiduciary function, rather than the solicitation or provision of legal advice. However, section XIV of the document contains legal advice from Owsen concerning settlor functions and may be redacted prior to production. I further note that the minutes are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. NOT PRIVILEGED SUBJECT TO REDACTION.

Document A–199 consists of the minutes of the September 29, 1999 annual meeting of the Salaried Plan Retirement Committee. The vast majority of the communications set forth in the minutes reflect ordinary business discussions and issues relating to the committee's fiduciary function, rather than the solicitation or provision of legal advice. However, section XIV of the document contains legal advice from Owsen concerning settlor functions and may be redacted prior to production. I further note that the minutes are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. NOT PRIVILEGED SUBJECT TO REDACTION.

Document A–200 consists of the minutes of the August 8, 2002 annual meeting of the Salaried Plan Retirement Committee. The vast majority of the communications set forth in the minutes reflect ordinary business discussions and issues relating to the committee's fiduciary function, rather than the solicitation or provision of legal advice. However, section XIV of the document contains legal advice from Owsen concerning

settlor functions and may be redacted prior to production. I further note that the minutes are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. NOT PRIVILEGED SUBJECT TO REDACTION.

Document A–201 is the same document as that listed at A–200, with the addition of a cover letter from Owsen to Loughlin that does not reflect, convey or request legal advice. As such, document A–201 must be produced subject to the same redactions authorized in my discussion of document A–200. NOT PRIVILEGED SUBJECT TO REDACTION.

### B) Privilege Log B—Buck Consultants Production

The documents contained in Privilege Log B were produced by Buck Consultants, the entity which served as Defendants' actuarial consultant prior to 2002. Plaintiffs sole contention with respect to these documents is that the attorney-client privilege has been waived because they were disclosed to Defendants' actuarial consultant. As previously discussed, the attorney-client privilege may attach to communications with an accountant "where the client, or the client's attorney, retains an accountant for the purpose of obtaining or providing legal advice." *Antolini,* 271 Fed.Appx. at 271 n. 1 (citing *Kovel,* 296 F.2d at 922).

The critical inquiry, as noted above, is whether the "third party consultant is involved in the giving of legal advice," *In re CV Therapeutics,* 2006 WL 1699536, at *6 (citing *SmithKline,* 232 F.R.D. at 476–77), or "functions like an employee in providing information which facilitates the obtaining of legal advice." *In re CV Therapeutics, Inc.,* 2006 WL 1699536, *6 (citing *In re Bieter Co.,* 16 F.3d at 936). "If what is sought is not legal advice but only accounting service ... no privilege exists." *Kovel,* 296 F.2d at 922.

After reviewing the documents listed on Privilege Log B, I conclude that the following documents are protected because the communications between Owsen and the actuary described therein took place at Ow-

sen's direction for the express purpose of assisting him in providing legal advice: B–1, B–2, B–3, B–4, B–6 (a duplicate of which appears on Privilege Log A at A–118); B–7; B–8; B–9; B–10 (a duplicate of which appears on Privilege Log A at A–54); and B–12. *See SmithKline*, 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics*, 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

The remaining documents, B–5 (a copy of which appears on Privilege Log A at A–64) and B–11, are not privileged and must be produced. I further note that these documents are not independently protected by the work-product doctrine because they were prepared in the ordinary course of business rather than in anticipation of litigation. NOT PRIVILEGED.

### C) Privilege Log C—Towers Watson Production

Privilege Log C contains documents produced by Towers Watson, Defendants' current actuarial consultant, over which Defendants assert attorney-client privilege and/or work product protection. Many of the documents contained in this privilege log are duplicates of documents previously listed on Privilege Log A. Accordingly, the following documents sought by Plaintiffs have previously been ruled upon:

Document C–1 (see discussion of Document A–20).

Document C–12 (see discussion of Document A–24)

Document C–13 (see discussion of Documents A–22, A–23 and A–25)

Document C–15 (see discussion of Document A–26)

Document C–17 (see discussion of Document A–161)

Document C–33 (see discussion of Document A–11)

Document C–34 (see discussion of Document A–10)

Documents C–42 through C–45 (see discussion of Documents A–7 through A–9)

Document C–46 (see discussion of Document A–18)

Documents C–2 and C–3 consist of emails exchanged between Owsen and Kistler on October 24, 2006 for the purpose of formulating legal advice with respect to settlor functions including a proposed amendment of the URC Pension Plan. These documents are privileged. PRIVILEGED.

Document C–4 consists of a October 3, 2006 fax cover sheet from Kulinski to Kistler and an attached letter from a beneficiary, Frederick Hane, to Loughlin. These documents do not constitute a communication to or from an attorney for the purpose of obtaining legal advice and, as such, they are not privileged. NOT PRIVILEGED.

Documents C–5, C–6 and C–7 consist of a series of emails exchanged between September 12 and September 15, 2006 between Owsen, Loughlin and Pittman wherein a document pertaining to the calculation of the benefits adjustment for a beneficiary, Jerry Fankhouser, is attached and forwarded. The communications do not request or describe legal advice from the attorney. Moreover, the document clearly reflects a core fiduciary function—Defendants' response to a request for a benefits determination by a beneficiary—and, as such, falls within the fiduciary exception to the attorney-client privilege. Finally, the document appears to have been created in the ordinary course of business and, as a result, is not entitled to protection under the work-product doctrine. NOT PRIVILEGED.

Documents C–8 and C–9 consist of an August 25, 2006 forward of an email from a beneficiary, Robert Wenom, from Loughlin to Kistler, and Kistler's forward of that email to other Towers consultants. None of the emails request, convey or describe legal advice from an attorney. NOT PRIVILEGED.

Documents C–10 and C–11 represent a string of email correspondence between Kulinski, Owsen, Loughlin, Kistler, and other Towers consultants in July, 2006 for the purpose of providing legal advice concerning an attached memorandum drafted by Loughlin.

The communications do not request or describe legal advice from an attorney. Moreover, the content of the emails falls within the scope of the fiduciary exception to the attorney-client privilege. Finally, the document appears to have been created in the ordinary course of business and, as a result, is not entitled to protection under the work-product doctrine. NOT PRIVILEGED.

Document C–18 is a 2001 draft version of the URC Pension Plan for Salaried Employees. To the extent that the document represents a draft that was communicated to counsel for the purpose of securing legal advice and review, the document relates primarily to a settlor function—updating the URC Pension Plan to reflect recent amendments—and is, therefore, privileged. PRIVILEGED.

Document C–19 consists of a handful of pages from a review performed by Owsen concerning the IRS qualification status of the URC Pension Plan. The notes reflect necessary and proposed amendments to the plan, a core settlor function. PRIVILEGED.

Documents C–20 and C–21 consist of a string of emails between Owsen, Turfitt and Kistler between June 22 and 24, 2003 concerning funding issues related to the URC Pension Plan. As noted above, issues concerning the funding of a pension plan are "settlor functions which do not implicate fiduciary duties." *In re Wachovia Corp.*, 2010 WL 3081359 at *11; *Hunter*, 220 F.3d at 718 (funding decisions are settlor functions); *In re RCN Litigation*, 2006 WL 753149 at *6 n. 4 (decisions related to profit sharing contributions and company matching contributions were "not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties"). Kistler's inclusion does not waive the privilege as to this document because his involvement as a consultant at the direction of Owsen was for the purpose of assisting with the provision of legal advice. *See SmithKline*, 232 F.R.D. at 476–77 (extending the attorney-client privilege to consultants retained to assist with the provision of legal advice); *In re CV Therapeutics*, 2006 WL 1699536, at *6 ("If the third party consultant is involved in the giving of legal advice, the privilege obtains."). PRIVILEGED.

Documents C–36, C–37 and C–38 consist of an email string between Kulinski, Owsen and Trezza concerning a correction to a draft of an IRS letter. These communications simply convey a minor correction to a draft letter and do not request, convey or describe legal advice. NOT PRIVILEGED.

Documents C–39 and C–40 consist of an October 4, 2005 email exchange between Loughlin and Kistler. In the first communication, Loughlin forwards a letter from a beneficiary, Geoff Soares, and requests advice. In his response, Kistler provides recommendations for legal review by Owsen. The emails clearly reflect communications with the actuary "for the purpose of obtaining legal advice from the attorney" concerning potential litigation. *Schmidt*, 343 F.Supp. at 446 (quoting *Kovel*, 296 F.2d at 922). PRIVILEGED.

Document C–51 is a June 16, 2006 email from Pittman to Loughlin and Kulinski which does not convey, request or describe legal advice. NOT PRIVILEGED.

### ORDER

AND NOW, this 21st day of December, 2011, this Court having undertaken *in camera* review of the documents at issue in the instant discovery dispute,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Production of Documents (Doc # 44) is hereby granted in part and denied in part. Similarly, Defendant's Cross Motion for Protective Order (Doc # 51) is granted in part and denied in part. Consistent with the accompanying Memorandum Opinion, Defendant is ordered to produce those documents that were determined not to be privileged within 20 days of this Order.